PETERS, ADMR., APPELLEE, *v.* COLUMBUS STEEL CASTINGS CO., APPELLANT.

[Cite as *Peters v. Columbus Steel Castings Co.,*
**115 Ohio St.3d 134, 2007-Ohio-4787.**]

(No. 2006–0507—Submitted February 28, 2007—Decided September 20, 2007.)

**O'DONNELL, J.**

## I. Introduction

{¶ 1} This appeal presents the issue whether the personal representative of a decedent's estate is required to arbitrate a wrongful-death claim when the decedent had agreed to arbitrate all claims against the alleged tortfeasor.

{¶ 2} In July 2003, William Peters ("Peters") began working at appellant Columbus Steel Castings Company's steel-forging plant. This case centers on the employment agreement between Peters and the company, which included a Dispute Resolution Plan ("the plan"). Peters signed an agreement to be bound by the plan, in which he indicated, "I understand and agree that mediation, and if unsuccessful, arbitration under the Dispute Resolution Plan will be my sole and exclusive remedies for any legal claims or disputes I may have against the Company regarding my employment." The plan stated that it applied to "the heirs, beneficiaries, successors, and assigns" of the employee.

{¶ 3} On his eighth day of employment, Peters fell from a height of approximately 50 feet while attempting to reach a crane from a catwalk. The fall proved fatal. Thereafter, Alice Peters (Peters's widow and the administrator of Peters's estate) brought two causes of action against the company: a survival action for injuries Peters sustained prior to his death and a wrongful-death action for his beneficiaries' damages arising from the death. Both claims alleged that the company committed an employer intentional tort that led to Peters's death.

{¶ 4} The company moved to dismiss the claims, arguing that the plan required the claims to be arbitrated. The trial court determined that while a survival claim for Peters's injuries could be resolved only pursuant to the plan, the wrongful-death claim could be brought in court. Alice Peters subsequently dismissed the survival claim to proceed solely on the wrongful-death claim.

{¶ 5} The company appealed, and the court of appeals affirmed the trial court's holding. In doing so, the court of appeals cited our decision in *Thompson v. Wing* (1994), 70 Ohio St.3d 176, 637 N.E.2d 917, for the proposition that wrongful-death claims are independent actions belonging to the decedent's next of kin, and

therefore an administrator's actions in pursuing damages for injuries to the decedent do not release a defendant from liability for wrongful-death claims.

{¶ 6} We accepted the company's discretionary appeal of this matter to clarify whether an individual may bind his or her beneficiaries to arbitrate their wrongful-death claims by agreeing to arbitrate any claims that he or she may have against a particular defendant. For the following reasons, we affirm the judgment of the court of appeals.

## II. Analysis

{¶ 7} The answer to this issue lies plainly in two longstanding general principles of law: (1) only signatories to an arbitration agreement are bound by its terms and (2) a survival action brought to recover for a decedent's own injuries before his or her death is independent from a wrongful-death action seeking damages for the injuries that the decedent's beneficiaries suffer as a result of the death, even though the same nominal party prosecutes both actions. These principles are discussed in turn.

{¶ 8} First, there is no dispute that " 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' " [1] While arbitration is encouraged as a form of dispute resolution, the policy favoring arbitration does not trump the constitutional right to seek redress in court. See id.; *ABM Farms Inc. v. Woods* (1998), 81 Ohio St.3d 498, 500, 692 N.E.2d 574; see also Section 16, Article I, Ohio Constitution. Therefore, unless the company proves that Peters's beneficiaries specifically agreed to arbitrate their wrongful-death claims, they should not be bound to do so.

{¶ 9} The second principle, which concerns the separate nature of survival claims and wrongful-death claims, must be placed in its proper context. Although there is no common-law action for wrongful death, R.C. 2125.01 establishes such a claim in Ohio. Under this provision, "[w]hen the death of a person is caused by wrongful act, neglect, or default which would have entitled the party injured to maintain an action and recover damages if death had not ensued, the person who would have been liable if death had not ensued * * * shall be liable to an action for damages."

{¶ 10} As opposed to a survival claim, through which a decedent's estate may recover for the injuries suffered by the decedent before his death, a wrongful-death claim belongs to the decedent's beneficiaries. Compare R.C. 2125.02(A)(1)

---

1. *Council of Smaller Ents. v. Gates, McDonald & Co.* (1998), 80 Ohio St.3d 661, 665, 687 N.E.2d 1352, quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.* (1960), 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409.

with R.C. 2305.21. "Except as provided in this division, a civil action for wrongful death shall be brought in the name of the personal representative of the decedent *for the exclusive benefit of the surviving spouse, the children, and the parents of the decedent * * * and for the exclusive benefit of the other next of kin of the decedent.*" (Emphasis added.) R.C. 2125.02(A)(1). In evaluating such a claim, the trier of fact may award damages for "the injury and loss resulting to the beneficiaries * * * by reason of the wrongful death." R.C. 2125.02(A)(2). The personal representative is involved to prevent multiplicity of suits and facilitate distribution of any sums received from wrongful-death claims to the various beneficiaries. See R.C. 2125.03.

{¶ 11} Thus, when an individual is killed by the wrongful act of another, the personal representative of the decedent's estate may bring a survival action *for the decedent's own injuries* leading to his or her death as well as a wrongful-death action *for the injuries suffered by the beneficiaries of the decedent* as a result of the death. Although they are pursued by the same nominal party, we have long recognized the separate nature of these claims in Ohio.

{¶ 12} In 1908, we stated that survival actions and wrongful-death actions "are not the same," even though they both relate to the defendant's alleged negligence. *Mahoning Valley Ry. Co. v. Van Alstine* (1908), 77 Ohio St. 395, 414, 83 N.E. 601. Thus, the fact that the representative of an estate fully litigates a survival action against a defendant does not prevent the representative from also bringing a wrongful-death action against the same defendant. Id. at paragraph three of the syllabus.

{¶ 13} We expanded on this holding in subsequent decisions, such as *Thompson*. There, the decedent had obtained a judgment in a medical-malpractice action against a group of defendants during her life. *Thompson*, 70 Ohio St.3d at 178, 637 N.E.2d 917. After her death, the personal representative of her estate brought a wrongful-death claim against the same defendants. Id. The defendants alleged that the wrongful-death action was barred by the judgment in favor of the decedent in the earlier case. Id.

{¶ 14} In our review, we noted that states generally view such claims in one of two different ways. Id. at 180, 637 N.E.2d 917. The majority of states treat wrongful-death actions as derivative of actions brought for the decedent's own injuries, and thus a recovery by the decedent or the decedent's estate extinguishes the beneficiaries' right to bring a wrongful-death action. Id. Conversely, a smaller number of states hold that the pursuit by a decedent or a decedent's estate of personal injury claims does not affect subsequent wrongful-death claims. Id.

{¶ 15} We reiterated in *Thompson* that the Ohio wrongful-death statute follows the minority position: "[T]he injured person cannot defeat the beneficiaries' right

to have a wrongful death action brought on their behalf because the action has not yet arisen during the injured person's lifetime. *Injured persons may release their own claims; they cannot, however, release claims that are not yet in existence and that accrue in favor of persons other than themselves.*" (Emphasis added.) Id. at 183, 637 N.E.2d 917.

{¶ 16} However, we noted that wrongful-death claims share many of the same issues as survival claims asserted against the same defendant. Id. at 184, 637 N.E.2d 917. Finding that the close relationships between the decedent and his beneficiaries created privity for such claims, we held that collateral estoppel bars the beneficiaries in the wrongful-death action from relitigating issues resolved in the decedent's previous action against that defendant. Id. at 184, 637 N.E.2d 917.

{¶ 17} Given the statutory language and our precedents, it is clear that survival claims and wrongful-death claims are distinct claims that belong to separate individuals, even though they are generally brought by the same nominal party (the personal representative of the estate). While we have allowed collateral estoppel to apply to such claims, given the deep similarity between the two and the privity between a decedent and his or her beneficiaries, there is no mistaking the independent nature of these actions.

{¶ 18} When Peters signed the arbitration agreement, he agreed to arbitrate *his* claims against the company, whether brought during his life or after his death. Thus, the provision in the agreement binding Peters's heirs, beneficiaries, successors, and assigns applies to a survival action, which is the vessel used to pursue his claims after his death.

{¶ 19} However, Peters could not restrict his beneficiaries to arbitration of their wrongful-death claims, because he held no right to those claims; they accrued independently to his beneficiaries for the injuries they personally suffered as a result of the death. See *Thompson,* 70 Ohio St.3d at 182–183, 637 N.E.2d 917. Thus, a decedent cannot bind his or her beneficiaries to arbitrate their wrongful-death claims. Id. The beneficiaries can agree to arbitrate these claims themselves, but they are not required to do so. Because Peters's beneficiaries did not sign the plan or any other dispute-resolution agreement, they cannot be forced into arbitration.

### III. Conclusion

{¶ 20} Although we have long favored arbitration and encourage it as a cost-effective proceeding that permits parties to achieve permanent resolution of their disputes in an expedient manner, it may not be imposed on the unwilling. Requiring Peters's beneficiaries to arbitrate their wrongful-death claims without a signed arbitration agreement would be unconstitutional, inequitable, and in

violation of nearly a century's worth of established precedent. As such, the judgment of the court of appeals is hereby affirmed.

Judgment affirmed.

MOYER, C.J., PFEIFER, LUNDBERG STRATTON, O'CONNOR, LANZINGER and CUPP, JJ., concur.

---

Millisor & Nobil Co., L.P.A., Richard A. Millisor, R. Scot Harvey, and Terry E. Lardakis, for appellant.

Rourke & Blumenthal, Michael J. Rourke, and Robert P. Miller; and Center for Constitutional Litigation, P.C., John Vail, Stephen B. Pershing, and Jesse R. Merriam, for appellee.

Bricker & Eckler, L.L.P., Kurtis A. Tunnell, Anne Marie Sferra, and Bobbie S. Sprader, urging reversal for amici curiae Ohio Chamber of Commerce and Ohio Manufacturers' Association.

Paul W. Flowers Co., L.P.A., and Paul W. Flowers, urging affirmance for amicus curiae Ohio Academy of Trial Lawyers.

Tate & Renner and Richard R. Renner, urging affirmance for amicus curiae Ohio Employment Lawyers Association.