**[Cite as *Vickers v. Canal Pointe Nursing Home & Rehab Ctr.*, 2016-Ohio-3244.]**

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

MARCUS VICKERS, et al.

      Appellant

      v.

CANAL POINTE NURSING HOME AND
REHAB CTR., et al.

      Appellee

C.A. No.     27757

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV-2014-07-3466

DECISION AND JOURNAL ENTRY

Dated: June 1, 2016

CARR, Presiding Judge.

**{¶1}** Plaintiff-Appellant, Marcus Vickers, Administrator of the Estate of Jack Johnson, appeals from the judgment of the Summit County Court of Common Pleas. This Court reverses and remands for further proceedings.

I.

**{¶2}** Mr. Johnson was a resident of Defendant-Appellee, Canal Pointe Nursing Home and Rehab Center ("Canal Pointe"), from January 12, 2013, to June 22, 2013. His son, Mr. Vickers, arranged for his care at the facility after Mr. Johnson suffered a debilitating stroke. As part of Mr. Johnson's admission paperwork, Mr. Vickers signed an arbitration agreement on his behalf. On June 22, 2013, Mr. Johnson passed away while under the care of Canal Pointe.

**{¶3}** Subsequently, Mr. Vickers brought a medical malpractice suit against Canal Pointe, alleging that its negligence led to his father's death. He advanced several claims, including a survivorship claim on behalf of his father and a wrongful death claim on behalf of his

father's estate and next of kin. Canal Pointe answered the complaint, but, shortly thereafter, filed a motion to stay the proceedings and compel arbitration. It was Canal Pointe's position that the arbitration agreement Mr. Vickers executed on behalf of his father applied to all of the claims that he advanced in his complaint.

{¶4} Mr. Vickers responded in opposition to Canal Pointe's motion to compel arbitration. He argued that, even if his survivorship claims were subject to arbitration, Ohio Supreme Court precedent provided that his wrongful death claims were not. In reply, Canal Pointe asserted that the Federal Arbitration Act preempted the case law upon which Mr. Vickers had relied.

{¶5} The trial court issued a ruling based upon the parties' respective filings. The court agreed that the Federal Arbitration Act preempted the case law upon which Mr. Vickers relied. Consequently, it granted Canal Pointe's motion to stay the proceedings and compel arbitration as to all of Mr. Vickers' claims.

{¶6} Mr. Vickers now appeals from the trial court's judgment and raises one assignment of error for our review.

II.

**ASSIGNMENT OF ERROR**

WHETHER THE TRIAL COURT ERRED WHEN IT HELD THAT THE DEFENDANT-APPELLEE'S ARBITRATION AGREEMENT IS ENFORCEABLE AGAINST THE WRONGFUL DEATH CLAIMS OF JACK JOHNSON'S NEXT-OF-KIN[.]

{¶7} In his sole assignment of error, Mr. Vickers argues that the trial court erred when it granted Canal Pointe's motion to stay and compel arbitration with respect to the wrongful death claim that he brought on behalf of his father's next-of-kin. We agree.

**{¶8}** "The question of whether an arbitration provision is applicable presents a matter of contract interpretation." *Varga v. Drees Co.*, 9th Dist. Lorain No. 13CA010385, 2014-Ohio-643, ¶ 6. Thus, "[t]he arbitrability of a claim is a question of law, and we review the arbitrability of a claim de novo." *Murray v. David Moore Builders, Inc.*, 177 Ohio App.3d 62, 2008-Ohio-2960, ¶ 7 (9th Dist.), quoting *McManus v. Eicher*, 2d Dist. Greene No. 2003-CA-30, 2003-Ohio-6669, ¶ 11. "[W]hen deciding motions to compel arbitration, the proper focus is whether the parties actually agreed to arbitrate the issue, i.e., the scope of the arbitration clause, not the general policies of the arbitration statutes." *Taylor v. Ernst & Young, L.L.P.*, 130 Ohio St.3d 411, 2011-Ohio-5262, ¶ 20.

**{¶9}** There is no dispute that Mr. Vickers signed an arbitration agreement on behalf of his father when he arranged for his care at Canal Pointe. The arbitration agreement provides, in relevant part, that it sets forth "a resolution procedure by which the Resident and [Canal Pointe] intend to resolve all disputes which may arise between them concerning any disagreement arising out of the Nursing Facility Admission Agreement." It describes the disputes subject to the terms of the agreement as

> [a]ny controversy, dispute, disagreement or claim of any kind arising out of, or related to the Nursing Facility Agreement * * *. These disputes include, but are not limited to, all claims based upon breach of contract (other than claims arising out of nonpayment of charges), negligence, medical malpractice, tort, breach of statutory duty, resident's rights, and any departures from accepted standards of care.

Because Mr. Vickers' wrongful death claim sounded in negligence, tort, and medical malpractice, Canal Pointe argued that it fell within the scope of the arbitration agreement.

**{¶10}** In *Peters v. Columbus Steel Castings Co.*, the Ohio Supreme Court considered "whether the personal representative of a decedent's estate is required to arbitrate a wrongful-death claim when the decedent had agreed to arbitrate all claims against the alleged tortfeasor."

*Peters v. Columbus Steel Castings Co.*, 115 Ohio St.3d 134, 2007-Ohio-4787, at ¶ 1. The facts were such that, a few days before his death, Mr. Peters signed an employment arbitration agreement that purported to bind all of his heirs and beneficiaries. *Id.* at ¶ 2-3. When his beneficiaries later sought to bring a wrongful death action against his employer, the employer invoked the arbitration agreement. *Id.* at ¶ 4. The Supreme Court determined, however, that "survival claims and wrongful-death claims are distinct claims that belong to separate individuals, even though they are generally brought by the same nominal party (the personal representative of the estate)." *Id.* at ¶ 17. Because Mr. Peters had no right to the claims of his beneficiaries, the Supreme Court found that the arbitration agreement he signed did not prevent his beneficiaries from later pursuing a wrongful death action in court. *Id.* at ¶ 19. Specifically, it held that "a decedent cannot bind his or her beneficiaries to arbitrate their wrongful-death claims." *Id.* Absent beneficiaries independently agreeing to arbitrate their claims, the Supreme Court held, "they cannot be forced into arbitration." *Id.*

{¶11} In opposing Canal Pointe's motion to stay and compel arbitration, Mr. Vickers relied upon *Peters*. Canal Pointe, meanwhile, acknowledged *Peters*, but argued that it was no longer good law. Canal Pointe relied upon *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. ___, 132 S.Ct. 1201 (2012), in which the United States Supreme Court discussed the preemptive effect of the Federal Arbitration Act.

{¶12} In *Marmet Health Care Ctr., Inc.*, the United States Supreme Court held that states may not create categorical bans "against predispute agreements to arbitrate personal-injury or wrongful-death claims against nursing homes * * *." *Marmet Health Care Ctr., Inc.* at 1204. There, family members in three consolidated cases signed admission agreements with nursing homes on behalf of their relatives, who were unable to do so at the time of their admissions. All

three agreements contained arbitration clauses that the nursing homes later sought to invoke. The Supreme Court of Appeals of West Virginia determined that the arbitration clauses were unenforceable as a matter of public policy. *See Brown ex rel. Brown v. Genesis Healthcare Corp.*, 228 W.Va. 646 (2011). In essence, the West Virginia Court carved out an exception for arbitration agreements that arise in the context of nursing home admissions due to the inherently complicated and stressful circumstances that typically exist in those circumstances. The United States Supreme Court held, however, that "'[w]hen state law prohibits outright the arbitration of a particular type of claim, * * * [t]he conflicting rule is displaced by the [Federal Arbitration Act].'" *Marmet Health Care Ctr., Inc.* at 1203, quoting *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 131 S.Ct. 1740, 1747 (2011). Because the West Virginia Court's holding amounted to a categorical ban on the arbitration of certain claims against nursing homes, the United States Supreme Court reversed the West Virginia Court's judgment. *See Marmet Health Care Ctr., Inc.* at 1203-1204.

{¶13} Upon review, we do not agree that the Ohio Supreme Court in *Peters* created the same type of categorical ban against arbitration that the United States Supreme Court struck down in *Marmet Health Care Ctr., Inc. Peters* was not a public policy decision. Rather, the *Peters* Court issued its decision on the basis of an accepted contractual principle: "that only signatories to an arbitration agreement are bound by its terms." *McFarren v. Emeritus at Canton*, 5th Dist. Stark No. 2013CA00040, 2013-Ohio-3900, ¶ 29, citing *Peters*, 115 Ohio St.3d 134, 2007-Ohio-4787. The Federal Arbitration Act specifically provides that arbitration provisions are valid and enforceable, "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. 2. "'[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Council*

*of Smaller Ent. v. Gates, McDonald & Co.*, 80 Ohio St.3d 661, 665 (1998), quoting *AT & T Tech.*, 475 U.S. 643, 648 (1986). Accordingly, "[t]he holding in *Peters* requiring a real party in interest to sign an arbitration agreement for [it] to be enforceable is not in conflict with the [Act] * * *." *McFarren* at ¶ 29.

{¶14} As previously set forth, wrongful death claims arise separately from survivorship claims and "belong to separate individuals, even though they are generally brought by the same nominal party (the personal representative of the estate)." *Peters* at ¶ 17. Mr. Vickers signed an admission agreement and arbitration agreement with Canal Pointe as his father's representative. Canal Pointe never argued that he signed the agreement in an individual capacity such that it might be enforceable against him. *See McFarren* at ¶ 30. Absent Mr. Vickers or his father's other beneficiaries signing the arbitration agreement in an individual capacity, "they cannot be forced into arbitration." *Peters* at ¶ 19. As such, the trial court erred when it granted Canal Pointe's motion to stay and compel arbitration as to the wrongful death claim that Mr. Vickers brought on behalf of his father's beneficiaries. *See McFarren* at ¶ 29-31. Mr. Vickers' sole assignment of error is sustained.

III.

{¶15} Mr. Vickers' assignment of error is sustained. The judgment of the Summit County Court of Common Pleas is reversed, and the cause is remanded for further proceedings consistent with the foregoing opinion.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

_____
DONNA J. CARR
FOR THE COURT


MOORE, J.
SCHAFER, J.
CONCUR.


APPEARANCES:

MARTIN S. DELAHUNTY, III, Attorney at Law, for Appellant.

SUSAN M. AUDEY, ERNEST W. AUCIELLO, and SARAH A. STOVER, Attorneys at Law, for Appellee.