[Cite as *Knight v. Altercare*, 2017-Ohio-6946.]

## IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## PORTAGE COUNTY, OHIO

PHYLLIS KNIGHT, EXECUTRIX : **O P I N I O N**
OF THE ESTATE OF PEGGY J. YOUNG,
DECEASED, :

CASE NO.  2016-P-0045
Plaintiff-Appellee, :

- vs - :

ALTERCARE POST-ACUTE :
REHABILITATION CENTER, INC., et al.,
:
Defendants-Appellants.
:

Civil Appeal from the Portage County Court of Common Pleas, Case No. 2014 CV 00823.

Judgment: Reversed in part, remanded in part, and dismissed in part.

*Martin S. Delahunty, III,* Slater & Zurz, One Cascade Plaza, Suite 2210, Akron, OH 44308 (For Plaintiff-Appellee).

*Steven J. Hupp, Ronald A. Margolis,* and *Brian F. Lange,* Bonezzi Switzer Pilito & Hupp Co., LPA, 1300 East Ninth Street, Suite 1950, Cleveland, OH  44114 (For Defendants-Appellants).

CYNTHIA WESTCOTT RICE, P.J.

{¶1}    Appellants, Altercare Post-Acute Rehabilitation Center and Altercare of Ohio, Inc., appeal from the judgment entered by the Portage County Court of Common Pleas staying proceedings pending arbitration and denying their motion for summary judgment.  At issue is whether the trial court erred in staying the matter for arbitration

where appellee, Phyllis Knight, Executrix of the Estate of Peggy J. Young ("the decedent"), was not a party to the underlying arbitration agreement and whether the denial of appellants' motion for summary judgment is a final, appealable order. We reverse the court's judgment of the former issue and dismiss the appeal as it relates to the latter issue.

{¶2} The decedent was a resident of appellee, Altercare Post-Acute Rehabilitation Center, Inc., a long-term nursing home. Upon entering the facility, the decedent and/or her legal representative entered into an arbitration agreement with the facility to arbitrate any and all claims that arise between the parties. On June 25, 2012, the decedent passed away while a resident of the facility.

{¶3} On June 10, 2014, appellee, through counsel, sent appellants a letter advising them of appellee's intention to invoke the arbitration agreement "with respect to her wrongful death claim and any and all claims which exists as of this point and time." Appellants subsequently refused to participate in arbitration, citing the expiration of the statute of limitations on both survivorship and wrongful-death claims. Appellants further stated that the agreement is only binding in a wrongful-death claim when executed by all beneficiaries to the decedent's estate, not merely the decedent's representative.

{¶4} On October 14, 2014, appellee filed a complaint alleging negligence surrounding the circumstances of the decedent's death; appellee asserted she attempted to invoke the arbitration agreement to submit the claims to arbitration, but appellants refused. As a result, appellee claimed appellants breached the arbitration agreement and intentionally interfered with the contract between the decedent and the facility. Appellants answered the complaint and later filed a motion for summary

judgment. In their motion, they argued the statute of limitations had expired on the wrongful-death claim and a request for arbitration could not be used to toll the statute of limitations. They further asserted appellee could not style her complaint as a breach of contract claim as a means to avoid the expiration of the limitations period on the wrongful-death claim. Appellants also maintained they could not be required to arbitrate a wrongful-death claim for beneficiaries who did not sign the underlying agreement.

{¶5} Appellee filed a response to appellants' motion, arguing the arbitration agreement was a valid, enforceable contract. She attached a copy of a residency agreement, signed by representatives for the facility and the decedent. The contract included an "Agreement to Resolve Legal Disputes Through Arbitration," which provided, inter alia, that "[a]ny legal controversy, dispute, disagreement or claim of any kind now existing or occurring in the future between the parties arising out of or in any way relating to this Agreement or the Resident's stay at Facility shall be settled by binding arbitration * * *." According to appellee, the language bound the facility to arbitrate the underlying wrongful-death claim. Appellants filed a reply to appellee's memorandum in opposition.

{¶6} After considering the parties' positions, the trial court denied appellants' motion for summary judgment. It additionally ordered: "[p]ursuant to the agreement of the parties, this matter is hereby stayed and the parties shall Arbitrate Plaintiff's claim of wrongful death pursuant to the terms of the Arbitration agreement entered into with Altercare."

{¶7} Appellants now appeal and raise two assignments of error. The first provides:

**{¶8}** "The trial court erred in staying this action pending arbitration since the plaintiff did not execute any arbitration agreement with the defendants."

**{¶9}** Generally, a trial court's decision to stay proceedings pending arbitration is reviewed for an abuse of discretion. *River Oaks Homes, Inc. v. Krann*, 11th Dist. Lake No. 2008-L-166, 2009-Ohio-5208, ¶41. When the trial court's grant or denial of a stay is premised upon questions of law, we review the judgment de novo. *Naylor Family Partnership v. Home S. & L. Co. of Youngstown*, 11th Dist. Lake No. 2013-L-096, 2014-Ohio-2704, ¶13. "Therefore, this court reviews de novo a trial court's legal conclusion as to whether a party is contractually bound by an arbitration clause." *Id.*

**{¶10}** Under their first assignment of error, appellants argue the trial court erred by staying the matter for arbitration because appellee was not a party to the arbitration agreement. They further maintain appellee cannot seek to have a wrongful-death claim arbitrated under the agreement because such a claim belongs to the decedent's individual beneficiaries and these individuals were not parties to the agreement. Appellants cite *Peters v. Columbus Steel Castings Co.*, 115 Ohio St.3d 134, 2007-Ohio-4787, in support.

**{¶11}** In *Peters*, the Ohio Supreme Court addressed the question of "whether the personal representative of a decedent's estate is required to arbitrate a wrongful-death claim when the decedent had agreed to arbitrate all claims against the alleged tortfeasor." *Id.* at ¶1. The Court held that, in a wrongful-death claim, the beneficiaries could not be restricted to arbitration by an agreement executed by the decedent. *Id.* at ¶19. The Court explained that the "wrongful death claim belongs to the decedent's beneficiaries" and requiring the beneficiaries to arbitrate their wrongful-death claim

4

without them signing the arbitration agreement would be "unconstitutional, inequitable and in violation of a century of established precedent." *Id. at* ¶10, 20.

{¶12} Here, the decedent and/or her representative executed the agreement with appellants. And, although appellee could have utilized the arbitration agreement to pursue a survival action, no survival claim was initiated by the estate. Once the statute of limitations on the survival claim ran, the agreement to arbitrate all claims against the facility had no effect and appellee possessed no authority to demand arbitration of the wrongful-death claim. In *Peters, supra*, the Court observed:

{¶13} As opposed to a survival claim, through which a decedent's estate may recover for the injuries suffered by the decedent before his death, a wrongful-death claim belongs to the decedent's beneficiaries. Compare R.C. 2125.02(A)(1) with R.C. 2305.21. "Except as provided in this division, a civil action for wrongful death shall be brought in the name of the personal representative of the decedent *for the exclusive benefit of the surviving spouse, the children, and the parents of the decedent * * * and for the exclusive benefit of the other next of kin of the decedent.*" (Emphasis added.) R.C. 2125.02(A)(1). * * *. (Emphasis sic.) *Peters, supra*, at ¶10.

{¶14} The Court further emphasized that "survival claims and wrongful-death claims are distinct claims that belong to separate individuals, even though they are generally brought by the same nominal party (the personal representative of the estate)." *Id.* at ¶17. Accordingly, the Court continued:

{¶15} When [the decedent] signed the arbitration agreement, he agreed to arbitrate *his* claims against the company, whether brought during his life or after his death. Thus, the provision in the agreement binding [the decedent's] heirs, beneficiaries, successors, and assigns applies to a survival action, which is the vessel to pursue his claims after death.

{¶16} However, [the decedent] could not restrict his beneficiaries to arbitration of their wrongful-death claims, because he held no right to those claims; they accrued independently to his beneficiaries for

5

their injuries personally suffered as a result of his death. * * * Thus, a decedent cannot bind his or her beneficiaries to arbitrate their wrongful-death claims. * * * The beneficiaries can agree to arbitrate these claims themselves, but they are not required to do so. (citations omitted). *Id.* at ¶18-19.

{¶17} Here, appellee, as personal representative of the decedent, brought the underlying claims, which sought to utilize the arbitration agreement to arbitrate a wrongful-death claim. As discussed above, appellee was not a party to the agreement and neither were any of the decedent's beneficiaries. We acknowledge that the beneficiaries, in this instance, have "agreed" to arbitrate their wrongful-death claims. We do not, however, read *Peters* to permit beneficiaries to use an arbitration agreement between a decedent and a facility, to which they are not signatories, as a vehicle to arbitration. Indeed, such a scenario places the proverbial cart before the horse.

{¶18} Initially, in order to propose arbitration as a means to resolve a claim, it stands to reason that a party must first, in fact, have a claim. As a wrongful-death claim involves an independent right that beneficiaries are entitled to assert, and the beneficiaries are not parties to the agreement, appellants breached no agreement between themselves and the beneficiaries in refusing to arbitrate the claim.

{¶19} Moreover, appellee's breach of contract and intentional-interference claims were premised upon the facility's refusal to arbitrate. The legal issue appellee wished to arbitrate, however, was a claim for wrongful death. The breach-of-contract claim was therefore a veiled attempt to assert a claim for which the statute-of-limitations period had passed. R.C. 2521.02(D)(1) sets forth a two-year statute-of-limitations period on a wrongful-death claim. The decedent passed on June 25, 2014, and the underlying complaint was filed on October 14, 2014 – more than two years after the

6

cause-of-action accrued. Appellee offers no support for the proposition that making a request for arbitration by letter to appellants before the expiration of the statute of limitations tolls the limitations period. Hence, even if the complaint did not fail as a matter of law, there would be no viable claim to submit to arbitration.

{¶20} We do not read *Peters* to stand for the proposition that when an agreement to arbitrate exists, to which wrongful-death beneficiaries are not signatories, that those beneficiaries may "agree to arbitrate," via that agreement, to avoid the applicable statute-of-limitations period. A decedent's beneficiaries consent or agreement to arbitrate a claim is of no consequence if the underlying claim is legally defunct. *Peters* simply states, as a matter of substantive law, that survival and wrongful-death claims are independent of one another, and that a decedent cannot bind his or her beneficiaries to arbitrate their wrongful-death claims. The latter point does not imply the beneficiaries are *required* to litigate their independent claim in a court of law. To the contrary, once a wrongful-death claim is filed, the beneficiaries may enter into a separate agreement to arbitrate the claim in lieu of litigating the matter. This decision, however, involves a separate and discrete agreement between the beneficiaries and the facility pursuant to the independent wrongful-death claim. *Peters*' statement that "[t]he beneficiaries can agree to arbitrate these claims themselves, but are not required to do so[,]" stands for the unremarkable principle that, in the course of prosecuting their wrongful-death claim, beneficiaries may independently agree to arbitrate their claim. Such a decision, however, necessarily presupposes the existence of a valid wrongful-death claim – something appellee does not possess.

**{¶21}** Notwithstanding the foregoing points, we recognize that, under certain circumstances, non-signing, third parties may enforce arbitration agreements. *See e.g. Trinity Health Sys. v. MDX Corp.*, 180 Ohio App.3d 815, 2009-Ohio-417, ¶22 (7th Dist.). "'[A] third-party beneficiary will only be bound by the terms of the underlying contract where the claims asserted by that beneficiary arise from its third-party beneficiary status.'" *Peters v. Columbus Steel Casting Co.*, 10th Dist. Franklin No. 05AP-308, 2006-Ohio-382, quoting *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediaries, S.A.S.*, 269 F.3d 187, 197 (3d Cir.2001). Hence, in order for a third-party to possess enforceable rights under an arbitration agreement, "* * * the performance of [the] promise [to arbitrate] must also satisfy a duty owed by the promisee to the beneficiary." *Hill v. Sonitrol of Southwestern Ohio, Inc.,* 36 Ohio St.3d 36, 40, 521 N.E.2d 780 (1988).

**{¶22}** The arbitration agreement evinces the intent that disputes, including negligence, between the decedent and the facility would be subject to binding arbitration. As emphasized above, however, "a wrongful death action is an *independent* cause of action." (Emphasis added). *Thompson v. Wing*, 70 Ohio St.3d 176, 183 (1994). Because, as a matter of law, the arbitration agreement could not envelop the beneficiaries' wrongful-death claims without their consent when the agreement was entered, the promise to arbitrate does not satisfy a duty owed by the facility to the beneficiaries. Further, the wrongful-death claim does not "arise out of" any third-party beneficiary status the decedent's beneficiaries might possess under the agreement. Instead, the claim, by legal necessity, arises from alleged injuries they suffered *as a result of the decedent's death. See Peters*, 2006-Ohio-382, ¶22. Again, this is

independent of any potential benefits they could ultimately receive as beneficiaries to the decedent's estate resulting from the binding arbitration of a survival or any other similar claim contemplated by the parties' agreement. Hence, while the beneficiaries may be third-party beneficiaries of, e.g., a survival claim, their wrongful-death claim is a separate cause flowing from their independent status as statutory beneficiaries.

{¶23} A review of the arbitration agreement reveals it was signed by the decedent's representative as well as an agent for the facility. The agreement does not include the signatures of any of the decedent's beneficiaries and, as a result, the decedent's beneficiaries were not parties to the agreement. *See Peters*, *supra*; *McFarren v. Emeritus at Canton*, 5th Dist. Stark No. 2013CA00040, 2013-Ohio-3900, ¶30 ("arbitration agreements are not enforceable against non-signing beneficiaries to a wrongful death claim.") Because they are not parties to the agreement, they may not attempt to enforce it. The arbitration process assumes the beneficiaries have a legally viable claim to arbitrate. In this case, no such claim exists. Appellee's breach of contract and intentional interference with business contract claims fail as a matter of law and, by necessary implication, the trial court's judgment staying the matter pending arbitration must be reversed.

{¶24} Appellants' first assignment of error has merit.

{¶25} For their second assignment of error, appellants contend:

{¶26} "The trial court erred in denying the appellants' motion for summary judgment as the plaintiff's claims were barred by the applicable statute of limitations."

{¶27} While an appeal relating to the grant of a stay pending arbitration creates a final order, the order is final only as to that issue. And the denial of a motion for

9

summary judgment is generally not a final appealable order, because it does not determine the action and prevent a judgment. *See e.g. Sagenich v. Erie Ins. Group*, 11th Dist. Trumbull No. 2003-T-0144, 2003-Ohio-6767, ¶3. "The denial of a motion for summary judgment is always reviewable on appeal following a subsequent final judgment." *Id.* Because the denial of appellants' motion for summary judgment is not final, we lack jurisdiction to consider their second assignment of error.

{¶28} Appellant's second assignment of error is dismissed.

{¶29} The trial court erred as a matter of law when it stayed the proceedings pending arbitration. The beneficiaries were not parties to the arbitration agreement and, as a result, could not seek enforcement of the same for purposes of pursuing their legally defunct wrongful-death claim. Our disposition and rationale for reversing the trial court's order staying the proceedings has the practical effect of vitiating appellee's breach-of-contract and intentional-interference claims. Nevertheless, because the trial court denied appellants' motion for summary judgment, this matter must be remanded to finalize any remaining issues. This opinion should not be construed to prevent the re-filing of motions for summary judgment.

{¶30} The judgment of the Portage County Court of Common Pleas is reversed, in part, remanded, in part; and the portion of appellants' appeal assigning error to an interlocutory order denying summary judgment is dismissed.


TIMOTHY P. CANNON, J., concurs,

DIANE V. GRENDELL, J., concurs in part and dissents in part, with a Dissenting Opinion.

_____

10

DIANE V. GRENDELL, J., concurs in part and dissents in part, with a Dissenting Opinion.

{¶31} While I agree with the majority's determination that the second assignment of error must be dismissed given the lack of a final order, I must dissent as to the reversal of the trial court's decision staying proceedings pending arbitration. Since Altercare and Knight both consented to arbitration, and in accordance with Ohio's well-established policy of encouraging arbitration, the lower court's judgment should be affirmed.

{¶32} "It has been the long-standing public policy of Ohio to favor and encourage arbitration between parties as 'a speedy and inexpensive way [toward] a final disposition of the controversy between them, and to avoid future litigation concerning the same matters.'" *Portage Cty. Bd. of Mental Retardation and Dev. Disabilities v. Portage Cty. Educators Assn. for Mentally Retarded*, 11th Dist. Portage No. 2006-P-0111, 2007-Ohio-2569, ¶ 10, citing *Corrigan v. Rockefeller*, 67 Ohio St. 354, 367, 66 N.E. 95 (1902). Arbitration provisions are ordinarily valid and enforceable. *See* R.C. 2711.01(A). "As a result, a court must indulge a strong presumption in favor of arbitration and resolve any doubts in favor of arbitrability." *Wascovich v. Personacare of Ohio*, 190 Ohio App.3d 619, 2010-Ohio-4563, 943 N.E.2d 1030*, ¶ 24 (11th Dist.); *also Academy of Medicine of Cincinnati v. Aetna Health, Inc.,* 108 Ohio St.3d 185, 2006-Ohio-657, 842 N.E.2d 488, ¶ 5.

{¶33} The majority's decision fails to properly consider and apply the foregoing principles, especially in light of the facts of this case, where both parties consented to have matters relating to Young's care resolved through arbitration. While the arbitration agreement at issue was signed by a representative of Young rather than by Knight,

11

nonsignatories can enforce arbitration agreements against signatories under certain circumstances. *Trinity Health Sys. v. MDX Corp.*, 180 Ohio App.3d 815, 2009-Ohio-417, 907 N.E.2d 746, ¶ 22 (7th Dist.). A third party can seek to benefit from a contract, including an arbitration agreement, provided it is contemplated by the parties with intent to provide a benefit. *West v. Household Life Ins. Co.*, 170 Ohio App.3d 463, 867 N.E.2d 868, 2007-Ohio-845, ¶ 13 (10th Dist.); *Huntington Natl. Bank v. A & J Plumbing, Inc.*, 11th Dist. Geauga No. 2011-G-3021, 2012-Ohio-526, ¶ 37 ("[t]he parties to the contract must intend that a third party benefit from the contract in order for the third party to have enforceable rights under the contract") (citation omitted).

{¶34} Here, the wishes of both parties show an intent to participate in arbitration, since Altercare signed the agreement and Knight sought to enforce it. The claims to be covered by arbitration include negligence and medical malpractice, specific claims that could be pursued by Young's beneficiaries if she died from these causes. A wrongful death matter is in the same vein as these claims. In addition, Knight properly emphasizes the arbitration agreement's inclusion of the following clause:

> The decision of the arbitrator shall be binding on all of the parties to the arbitration, and also on their successors and assigns, including the agents and employees of Facility, and all persons whose claim is derived through or on behalf of the Resident, including, but not limited to, that of any parent, spouse, child, guardian, executor, administrator, legal representative, or heir of Resident.

{¶35} This language reveals that persons including any heirs were anticipated to be impacted by this agreement by both Knight and appellants. It specifically indicates that arbitration decisions made from claims "derived through" Young should be binding on heirs. Use of this language appears to directly consider wrongful death claims, which are not claims brought "on behalf of" the resident but claims brought

12

independently by the heirs.  The only way for heirs to be bound by arbitration in such a scenario would be if they were permitted to bring such a claim to arbitration in the first place.  This is precisely what Knight sought to do in the present case.

**{¶36}** It is also worth noting that principles of equitable estoppel have been applied in some federal courts when the nonsignatory seeks to enforce an arbitration agreement or contract against the signatory, where there is a close relationship between the parties and the dispute is intertwined with the underlying contract.  *See I Sports v. IMG Worldwide, Inc.*, 157 Ohio App.3d 593, 2004-Ohio-3113, 813 N.E.2d 4, ¶ 14 (8th Dist.), citing *Thomson-CSF, S.A. v. American Arbitration Assn.*, 64 F.3d 773, 779 (2nd Cir.1995) ("circuits have been willing to estop a *signatory* from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed").  Such principles would properly apply here, where appellants clearly sought out an arbitration agreement, Young entered such an agreement, the agreement covered claims related to possible negligence and the standard of care, and now seek to avoid arbitration.

**{¶37}** *Peters v. Columbus Steel Castings Co.,* 115 Ohio St.3d 134, 2007-Ohio-4787*,* 873 N.E.2d 1258, and *McFarren v. Emeritus at Canton*, 2013-Ohio-3900, 997 N.E.2d 1254 (5th Dist.), discussed by the appellants and the majority, provide that arbitration clauses are not enforceable against non-signatory beneficiaries to a wrongful death claim.  It must be emphasized, however, that these cases generally discuss only whether the *beneficiaries* are required to submit to the arbitration agreement and do not address the converse situation which is present in this case: whether the nursing home

can be bound as well. The conclusion in *Peters* emphasizes that arbitration "may not be imposed on the unwilling," who should not be bound by the decision of another to arbitrate. *Peters* at ¶ 20; *Wascovich*, 2010-Ohio-4563, at ¶ 6. This specific principle does not apply to appellants, since Altercare signed the arbitration agreement, evincing an intent to enter into arbitration regarding claims relating to Young.

**{¶38}** *Peters* explains that "[t]he beneficiaries can agree to arbitrate these claims themselves, but they are not required to do so." *Id.* at ¶ 19. Here, Knight chose to agree to arbitrate the claims with appellants by requesting arbitration. The appellants themselves had already agreed to arbitration of claims relating to Young and, thus, essentially received *exactly* what they had bargained for when entering the contract.

**{¶39}** Finally, it is clear that both Altercare and Young voluntarily agreed to submit matters relating to her care to arbitration. There is no question raised disputing that this agreement was fair and is not procedurally or substantively unconscionable, thus making it a valid agreement absent any argument to the contrary. *See generally Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408 (finding a nursing home resident arbitration agreement to be generally valid provided there is no unconscionability or other defect). Further, as noted by Knight, attempts to timely invoke the arbitration clause to pursue the wrongful death claim were rejected by Altercare, which warranted the filing of the present lawsuit.

**{¶40}** For the foregoing reasons, the trial court's ruling staying this matter for arbitration was consistent with the terms of the arbitration agreement, the law, and the policy in favor of arbitration. As such, its decision should be affirmed and I must respectfully dissent.