Robb, P.J.
{¶ 1} Defendant-Appellant Heavy Timber Truss & Frame LLC appeals the decision of Jefferson County Common Pleas Court denying its motion to compel arbitration and stay the proceedings. The issue in this case is whether the trial court erred in denying the motion. More specifically we are asked to decide whether a signature on checks that include specific notations to the unsigned contract constitutes the signature for the unsigned contract thereby binding Plaintiff-Appellee Albert Carapellotti to the arbitration provision in the contract. For the reasons expressed below, while the notation on the three checks written by Appellee to Appellant is very specific, there is no reference to agreeing to arbitration and there is no evidence there was an agreement to arbitrate. Therefore, while the signature on the checks may have created some kind of contract between the parties, it did not include a contract to arbitrate. The trial court's decision is affirmed.
Statement of the Case
{¶ 2} Appellee was building a home in Wintersville, Jefferson County, Ohio. He engaged Appellant to design, in conjunction with a design team, and supply a timber frame for the house. A purchase agreement was presented to Appellee. Appellee did not sign the agreement. The Purchase Agreement was dated November 4, 2016, was nine pages long, was labeled "Purchase Agreement," indicated it was project # 1659, contained a progress and payment summary and schedule, and contained an arbitration clause.
{¶ 3} The fifth page of the Purchase Agreement sets forth a specific project progress and payment schedule. The owner, Appellee, is listed as being responsible for four items on this schedule. First, the owner was supposed to review, sign, and return the purchase agreement with payment for 10% of the contract price, which was listed as $18,896.50. Next, the owner was required to review, sign, and return the Authorization to Proceed for purchasing of timbers (ATP # 1) and submit payment, which was listed as 30% of the contract price. The schedule indicated the ATP # 1 would contain the exact amount due. Next, the owner was required to review, sign, and return Authorization to Proceed for fabricating timbers (ATP # 2) and submit payment, which was 30% of the contract price. The schedule indicated that ATP # 2 would indicate the exact amount due. Lastly, the owner was required to submit pre-delivery payment ATP # 3, which was the balance of the contract amount. The estimated contract price, $188,965.00, was listed on page three of the contract.
*963 {¶ 4} A quote and deposit summary appears to have been given to Appellee around the same time the Purchase Agreement was given to him. This paper is not incorporated by reference into the Purchase Agreement and is not labeled as a part of the contract; it lists the estimated total cost as $188,965.00. The initial 10% payment was specified as $18,896.50. The 30% Timber Payment was listed as $56,689.50. The 30% Production Payment was listed as $56,689.50. The Delivery Payment was listed as $56,689.50.
{¶ 5} The Purchase Agreement contained General Conditions. Paragraph 10 stated the agreement was not binding unless it was signed by both parties. Defendant's Exhibit C. Paragraph 15 was the arbitration clause. It indicated all disputes arising out of the contract shall be decided in Kanawha County, West Virginia, in accordance with the construction industry arbitration rules of the American Arbitration Association, unless the parties mutually agree otherwise. Defendant's Exhibit C.
{¶ 6} On November 15, 2016 Appellee wrote two checks to Appellant. The first check was for $18,896.50. Defendant's Exhibit D. Written on the memo line of the check was "10% Down, $188,965.00 project cost, Purchase Agreement dated 11/4/16, Project # 1659, Timber Frame/SIP Roof & Tongue & Groove Ceiling." Defendant's Exhibit D. The second check was for $56,689.50. Defendant's Exhibit D. Written on the memo line of this check was "30% payment, $188,965.00 project cost, Purchase Agreement dated 11/4/16, Project # 1659, Timber Frame/SIP Roof & Tongue & Groove ceiling. Defendant's Exhibit D. On January 18, 2017 Appellee wrote another check to Appellant. This check was for $56,689.50. Defendant's Exhibit D. Written on the memo line of this check was "30% production payment, $188,965.00 project total cost, Purchase Agreement dated: 11/4/16, Project # 1659, Timber Frame/SIP Roof & Tongue& Groove ceilings." Defendant's Exhibit D.
{¶ 7} Prior to the January 18, 2017 payment, Appellee was notified there were changes to the design since the November 4, 2016 Purchase Agreement and there was an increase in the cost. Defendant's Exhibit E. The increase was $6,500 and there were negotiations regarding this increase. Defendant's Exhibit F. However, an additional agreement was not reached and Appellee decided not to use the timber frame from Appellant. Defendant's Exhibit G.
{¶ 8} Appellee then filed suit against Appellant and other defendants alleging general negligence, architectural professional negligence, engineering professional negligence, deceptive consumer sales practices, products liability, and implied warranties. 4/26/17 Complaint.
{¶ 9} Appellant filed an answer and counterclaim. 7/17/17 Answer and Counterclaim. Its seventeenth affirmative defense stated, "The claims set forth in Plaintiff's Complaint are subject to arbitration as set forth in the Motion to Compel Arbitration." 7/17/17 Answer and Counterclaim.
{¶ 10} The following day, Appellant filed a Motion to Compel Arbitration and for a Protective Order staying Proceedings. 7/18/17 Motion. Appellant asserted the claims were subject to arbitration per the contract.
{¶ 11} In response, Appellee filed two motions in opposition to the motion to compel. 7/19/17 Contra Motion and 7/20/17 Supplemental Contra Motion. Appellee asserted multiple reasons why arbitration should not be ordered. He contended there was no agreement to arbitrate, he did not sign the contract requiring arbitration, and instead of creating a contract there were just ongoing negotiations and he rejected *964 the offers. 7/19/17 Contra Motion. He asserted a non-signatory cannot be bound to an arbitration agreement when it is related to real estate. 7/19/17 Contra Motion. He further asserted the arbitration agreement is not enforceable because it denied him an adequate remedy. 7/19/17 Contra Motion. He contended his tort, UCC implied warranty, and Consumer Sales Practices Act claims are not arbitrable. 7/19/17 Contra Motion. He further argued Appellant waived arbitration by failing to file a demand for arbitration. 7/19/17 Contra Motion. He lastly argued R.C. 4113.62(D) voids the arbitration clause because the statute precludes arbitration for construction contracts for real estate in this state to occur in any other state than Ohio. 7/20/17 Supplemental Contra Motion. The arbitration clause at issue required arbitration to occur in West Virginia.
{¶ 12} The trial court held a hearing on August 7, 2017. Following the hearing, Appellant filed a reply and rebuttal to the contra motions once again requesting the court to stay the proceedings pending arbitration. 8/13/17 Motion to Compel Arbitration and Stay Proceedings.
{¶ 13} On February 2, 2018, the trial court denied the motion to compel arbitration. 2/2/18 J.E. The majority of the trial court's reasoning focused on its conclusion that there was no contract to arbitrate. It explained:
Therefore, applying basic principles of contract law, for an agreement to be enforceable, there must be sufficient evidence that demonstrates a "meeting of the minds" with separate consideration. At hearing, there was much discussion regarding the planning, engineering, design and various specifications, proposed construction and design of the residence, pricing and cost estimates for professional services as well as material and ultimately, a breakdown of communication between Mr. Breisch (who functioned also as the general contractor), the homeowner and Mr. Bode. Other than a reference on three checks referencing the pre-printed, boilerplate "purchase agreement general conditions", there is no evidence that Parties contemplated or had any type of discussion whatsoever regarding arbitration. The general documents, drafted by Heavy Timber, none of which are signed by anyone, must be construed against Heavy Timber. Testimony presented in support of Heavy timber acknowledged that there were no discussions either with the homeowner or Mr. Breisch regarding the arbitration clause.
* * *
In the case at bar, neither Party produced a signed, written contract. Defendant asserts that a signature is not required to enforce an arbitration clause. While the case law supports that generally a signature is not necessary to enforce an arbitration clause, that alone does not negate that there remains a requisite showing that there must be a separate agreement to arbitrate independent of the general contract. And, Plaintiff's argument that the absence of signatures rebuts the presumption in favor of arbitration is well taken. Furthermore, according to the "written contract," (i.e., Purchase Agreement), in which the Defendant relies and seeks to enforce, it specifically states in paragraph 10, "This Agreement or Modifications thereto, if any, shall not be binding upon OWNER or HTT & F until signed by the parties hereto." Again, Heavy Timber in its own document requires the Parties' signatures. Defendant's reliance on the memorandum line of three checks negotiated by Plaintiff to Heavy Timber referencing "Purchase Agreement dated 11/4/16" is insufficient given the specific *965 language of Heavy Timbers' writing. Again, Plaintiff claims that there was no written contract but a series of verbal agreements spanning several months between July 2016 and March 2017. In Plaintiff's Affidavit, he states several times that no arbitration agreement was negotiated, discussed or even mentioned to him by anyone. During testimony of Mr. Bode, all negotiations by Mr. Bode were done with Mr. Breisch and no testimony established that there was any discussion of any kind regarding the pre-printed, boiler-plate arbitration clause. Defendant asserts that because the Plaintiff is a businessman, he understands the common practice of contracts and arbitration clauses. While this may be true, the Court still is left without sufficient evidence that the Parties even discussed the separate issue of arbitration much less negotiated it. The emails between Mr. Breisch and Heavy Timber presented by the Parties in support show an ongoing series of offers regarding the specifications, price of materials and professional services by Heavy Timber with Mr. Breisch, referred to, at hearing, as the "general contractor" by Mr. Bode during his testimony. There was no evidence presented that neither Mr. Carapellotti [Plaintiff] nor Breisch agreed to, discussed or even considered arbitration.
2/2/18 J.E.
{¶ 14} The court also found Appellee's argument that arbitration is inapplicable to the claims raised persuasive; the court rejected Appellant's claim that Appellee artfully presented the legal theories to avoid being bound by arbitration. 2/2/18 J.E.
{¶ 15} Appellant timely appealed that decision.
Assignment of Error
"The Court of Common Pleas erred in failing to find that Carapellotti's [Appellee] signed checks, which included an express reference to the purchase agreement by date, project number, and which checks paid specific percentages of the contract price, were sufficient to ratify or otherwise overcome the lack of signature on the purchase agreement."
{¶ 16} The Ninth Appellate District has stated, generally, an appellate court reviews a trial court's stay of proceedings pending arbitration under R.C. 2711.02 under an abuse of discretion standard. Featherstone v. Merrill Lynch, Pierce, Fenner & Smith, Inc. , 159 Ohio App.3d 27, 2004-Ohio-5953, 822 N.E.2d 841, ¶ 4 (9th Dist.). The Eighth Appellate District, however, has explained the standard of review for a trial court's ruling on a motion to stay and compel arbitration depends on the type of questions raised in the challenge. Wisniewski v. Marek Builders, Inc. , 2017-Ohio-1035, 87 N.E.3d 696, ¶ 42 (8th Dist.). In the case before us, the trial court determined there was no contract to arbitrate. The existence of a contract is a question of law and is reviewed de novo on appeal. Mulvey v. GuideOne Mut. Ins. Co. , 10th Dist., 2017-Ohio-7902, 98 N.E.3d 926, ¶ 15 ; Oryann, Ltd. v. SL & MB, LLC , 11th Dist. No. 2014-L-119, 2015-Ohio-5461, 2015 WL 9485646, ¶ 24 ; Zelina v. Hillyer , 165 Ohio App.3d 255, 2005-Ohio-5803, 846 N.E.2d 68, ¶ 12 (9th Dist.). Thus, the issue of whether a party has agreed to submit an issue to arbitration is reviewed under a de novo standard of review. Hedeen v. Autos Direct Online, Inc. , 2014-Ohio-4200, 19 N.E.3d 957, ¶ 9 (8th Dist.).
{¶ 17} "(A)rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Council of Smaller Enter. v. Gates, McDonald & Co., 80 Ohio St.3d 661, 665, 687 N.E.2d 1352 (1998), quoting AT & T Technologies, *966 Inc. v. Communications Workers of Am., 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). "While arbitration is encouraged as a form of dispute resolution, the policy favoring arbitration does not trump the constitutional right to seek redress in court." Peters v. Columbus Steel Castings Co. , 115 Ohio St.3d 134, 2007-Ohio-4787, 873 N.E.2d 1258, at ¶ 8.
{¶ 18} The elements of a contract include the following: an offer, an acceptance, contractual capacity, consideration (the bargained-for legal benefit or detriment), a manifestation of mutual assent, and legality of object and of consideration. Kostelnik v. Helper , 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 16. "The law is clear that to constitute a valid contract, there must be a meeting of the minds of the parties, and there must be an offer on the one side and an acceptance on the other." Noroski v. Fallet , 2 Ohio St.3d 77, 79, 442 N.E.2d 1302 (1982).
{¶ 19} In Ohio non-signatories are not bound by arbitration agreements. For instance, the Eighth District Court of Appeals affirmed a trial court's denial of a motion to stay and referral to arbitration because none of the appellees were signatories to the appellant's employment contract, and thus could not be required to submit their claims to arbitration pursuant to a contract they did not sign. Boedeker v. Rogers , 136 Ohio App.3d 425, 429, 736 N.E.2d 955 (8th Dist. 1999). Likewise, the Ohio Supreme Court determined that a liquidator, who was not a signatory on the original contract, was not bound to arbitration agreements entered by the insolvent insurer because she had not signed the contract to which the arbitration agreement applied. Taylor v. Ernst & Young, L.L.P. , 130 Ohio St.3d 411, 2011-Ohio-5262, 958 N.E.2d 1203 (Liquidator was not a party to the original contract.).
{¶ 20} Paragraph 10 in the general conditions of the Purchase Agreement indicated the contract must be signed by both parties in order to be binding:
10. COMPLETE CONTRACT
This Agreement comprises the entire contract between the parties and no other representations are given or should be implied from the written and oral negotiations that preceded this Agreement. The parties shall not be bound by any independent representative's or employee's representations, warranties, promises, or inducements not set forth in this Agreement. No representations, understanding, or agreements have been made or relied upon in making this Agreement other than those specifically set forth herein. This Agreement or modifications thereto, if any, shall not be binding upon OWNER or HTT & F until signed by the parties hereto. If an executed copy of this Agreement, signed by HTT & F, is not delivered to OWNER within fifteen (15) days of the date of this Agreement or the date the Agreement is received by HTT & F, whichever is later, then this Agreement shall be of no force or effect and all monies paid herein shall be immediately refunded to OWNER.
Defendant's Exhibit C.
{¶ 21} It is undisputed that neither party signed the Purchase Agreement; the purchase agreement submitted as an exhibit in this case was not signed by either party.
{¶ 22} Appellant contends that the three checks Appellee wrote to Appellant constitute the signature for the contract. Appellant is correct Appellee wrote three checks to Appellant. Those checks are signed by Appellee and the memo line of all three checks referenced the November 4, 2016 Purchase Agreement, the project number of the Purchase Agreement, the project *967 was a Timber frame/SIP Roof and Tongue and Groove ceiling, and also indicated the percentage of the payment. Those checks were cashed by Appellant.
{¶ 23} The question in this case is whether the memo line of the checks taken in conjunction with Appellee's signature on the check and Appellant's endorsement and/or cashing the checks constituted signature for the November 4, 2016 Purchase Agreement binding Appellee to arbitration.
{¶ 24} In determining whether a signature on a check could constitute a signature for a contract, the Tenth Appellate District indicated it could if the signed writing refers to the unsigned writing or if it appears by inspection and comparison of the writings that they logically relate to or form part of the same transaction. LHPT Columbus, L.L.C. v. Capitol City Cardiology, Inc. , 10th Dist., 2014-Ohio-5247, 24 N.E.3d 712, ¶ 31. That principle is a statute of frauds principle.
{¶ 25} The LHPT Columbus, LLC was a realty case, where the statute of frauds required a writing to be signed, and it dealt with whether a rent check could constitute a valid assignment of a lease. Id. at ¶ 28-31. There was no separate assignment of the lease. The rent check contained the identity of the landlord, the identity of the tenant, the monthly rental amount, the location of the rented premises, and indicated the amount paid was for "rent." Id. at ¶ 28. There was no other document that was an assignment of the lease. The appellate court held that to the extent that the trial court found the rent check alone memorialized an assignment, the trial court was incorrect. Id. at ¶ 30. It explained that for a lease to be assigned it must be signed by the party assigning it. Id. , citing R.C. 1335.04. The rent check was not signed by the assignor, it was signed by the assignee. Id. at ¶ 30. Thus, the Appellate Court held the checks did not establish a contract for an assignment between the assignor and assignee. Id. Furthermore, the court noted the checks did not reference the assignor, the lease agreement, the assignment, termination date or that assignee accepted the assignor's entire interest in the space for the unexpired term. Id. "In other words, the checks do not establish with reasonable certainty that a contract for an assignment was made." Id.
{¶ 26} The LHPT Columbus, LLC case involved the statute of frauds. The statute of frauds indicates certain contracts must be in writing and signed by the party to be charged. R.C. 1335.05. Regardless of whether the statute of frauds is applicable to the case at hand, the principle discussed above indicates a signature on one document could constitute a signature for the contract if there is a sufficient nexus to indicate the signature on the one document was intended to be the signature for the contract. The LHPT Columbus, LLC case is helpful in resolving the case at hand.
{¶ 27} All three checks contain a great deal of information on the memo line. All three checks stated, "Purchase Agreement dated 11/4/16." Defendant's Exhibit D. All three checks stated, "Project # 1659." Defendant's Exhibit D. The Purchase Agreement containing the arbitration clause is labeled "PURCHASE AGREEMENT." Defendant's Exhibit C. It is dated November 4, 2016 and identifies the project as "Project # 1659." Defendant's Exhibit C. All three checks listed the project cost as $188,965.00. Defendant's Exhibit D. This is the project cost that is listed on page three of the Purchase Agreement. Defendant's Exhibit C. The checks also label the payment as 10% down, 30% payment and 30% production payment. Defendant's Exhibit D. This also corresponds with the progress and payment summary on page 3 and 5 of the Purchase Agreement. Defendant's Exhibit C. The first payment in that summary *968 is listed as the "initial 10% deposit of $18,896.50." Defendant's Exhibit C. This directly corresponds to the first check for the 10% down payment written by Appellee; that check was for $18,896.50. Defendant's Exhibit D. The second payment on the summary is a 30% payment to purchase the timbers. Defendant's Exhibit C. This summary does not list the exact dollar amount. However, 30% of the project costs is $56,689.50, which is the amount of the second check. The third payment on the summary is 30% to produce/fabricate the timbers. Defendant's Exhibit C. This corresponds with the third check which specifically indicates "30% production payment." Defendant's Exhibit D. Like the second payment, the summary for the third payment does not list the exact dollar amount. However, the check is written for 30% of the project cost, which is $56,689.50.
{¶ 28} As can be seen, each check is specific to three separate phases of the project and the information on the memo line of each check is extensive as to each of those phases. However, what is missing from any of these checks is an indication that Appellee was agreeing to arbitration. Admittedly, each of the checks reference the project number and the 11/4/16 Purchase Agreement. Without more evidence this is not enough to indicate Appellee was agreeing to arbitration. It is undisputed that there was no evidence indicating arbitration was verbally discussed between the parties. Inspection of the purchase agreement and the checks does not clearly indicate the signature on the check was intended to be the signature for the purchase agreement; the checks do not establish with reasonable certainty there was a contract to arbitrate.
{¶ 29} Consequently, the signatures on the checks did not constitute the signature for the entire Purchase Agreement, which included the arbitration clause. Pursuant to the terms of the Purchase Agreement, in order for it to be enforceable it had to be signed by the parties. Defendant's Exhibit C, Purchase Agreement, Paragraph 10. While the signatures and notations written on the memo line of the checks indicate there may have been some type of contract created between the parties, that evidence does not indicate the parties agreed to arbitrate. Arbitration was not noted on the check and there was no other indication that Appellee agreed to all of the terms of the purchase agreement. Furthermore, there was no evidence submitted indicating the parties discussed or agreed to arbitrate claims. Therefore, Appellee cannot be compelled to arbitrate since he did not agree to arbitrate. The trial court's decision was correct. Appellee's alternative arguments for upholding the trial court's decision are rendered moot by that determination and are not addressed.
Conclusion
{¶ 30} Appellant's assignment of error lacks merit. There is no evidence that there was an agreement to arbitrate. The trial court's decision to deny the motion to compel arbitration is affirmed.
Donofrio, J., concurs.
Waite, J., concurs.