[Cite as *Midland Credit Mgt. Inc. v. Bowers*, 2025-Ohio-2578.]

# IN THE COURT OF APPEALS OF OHIO

### SEVENTH APPELLATE DISTRICT
### MONROE COUNTY

MIDLAND CREDIT MANAGEMENT, INC., ET AL.,

Plaintiff and Counterclaim Defendant-Appellees,

v.

HOLLY BOWERS,

Defendant and Counterclaim Plaintiff-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 24 MO 0018

---

Civil Appeal from the
Court of Common Pleas of Monroe County, Ohio
Case No. CVH 2024-132

**BEFORE:**
Katelyn Dickey, Carol Ann Robb, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. H. Toby Schisler* and *Atty. Sarah E. Sessler,* Dinsmore & Shohl LLP, for Plaintiff and Counterclaim Defendant-Appellees and

*Atty. Laura K. McDowall,* McDowall Co., LPA*, Atty. Anand N. Misra,* The Misra Law Firm, LLC and *Atty. Robert S. Belovich,* Robert S. Belovich Attorney LLC, for Defendant and Counterclaim Plaintiff-Appellant.

Dated:  July 21, 2025

**DICKEY, J.**

**{¶1}** Defendant and Counterclaim Plaintiff-Appellant, Holly Bowers, appeals the judgment entry of the Monroe County Common Pleas Court granting the motion to stay this matter pursuant to R.C. 2711.02, and to compel arbitration pursuant to R.C. 2711.03, filed by Plaintiff and Counterclaim Defendant-Appellee, Midland Credit Management Inc. in this action on a credit card account. Appellant contends Appellee has failed to demonstrate it is an assign of the original creditor, and therefore, Appellant does not have standing to seek a stay of this matter or to compel arbitration. Appellant further contends there are factual issues regarding her use of the credit card and receipt of the cardmember agreement containing the arbitration agreement. Because we find Appellee has standing to assert the motion to stay and compel arbitration, and the uncontroverted evidence establishes Appellant is party to the arbitration agreement, the judgment entry of the trial court staying the civil case and enforcing the arbitration agreement is affirmed.

## FACTS AND PROCEDURAL HISTORY

**{¶2}** On March 4, 2024, Appellee filed a complaint against Appellant in Monroe County Court, alleging Appellant owed $1,034.79 on a credit card account, which was charged off on July 31, 2022 by the original creditor and Appellee's alleged predecessor-in-interest, the Bank of Missouri ("BOM"). On May 2, 2024, Appellant filed an answer denying the allegations in the complaint, significantly, that BOM issued the credit card to her and she made purchases on the account.

**{¶3}** Appellant stated a single counterclaim for which she sought class certification. The counterclaim alleges Appellee's debt collection practices constitute violations of Fair Debt Collection Practices Act and Ohio Consumer Sales Practices Act, as well as fraud, abuse of process, civil conspiracy, and negligence. In addition to Appellee, Appellant named the attorney who signed the complaint and his Minnesota law firm as counterclaim defendants (collectively with Appellee "Counterclaim Defendants"). Because the damages requested in the counterclaim exceeded the jurisdiction of the county court, the matter was transferred to the common pleas court.

**{¶4}** The Counterclaim Defendants filed their answer on June 14, 2024, which included the affirmative defense that the counterclaim was either precluded or limited due

Case No. 24 MO 0018

to an arbitration provision in the cardmember agreement. A footnote indicated Counterclaim Defendants were gathering the necessary affidavits to file a motion to stay the proceedings and compel arbitration.

**{¶5}** On July 24, 2024, Appellee filed a motion to stay the proceedings and to compel arbitration of the counterclaim, or in the alternative, to strike the request for class certification. Appellee alleged Appellant had agreed to submit the collection claim and counterclaim to binding arbitration, and to waive her right to pursue a class action in the cardmember agreement. Appellee's motion cites 9 U.S.C. 3 and R.C. 2711.02(B), which govern stays of trial pending arbitration, but the motion further seeks a court order compelling arbitration pursuant to 9 U.S.C. 4 and R.C. 2711.03, which govern enforcement of an arbitration agreement.

**{¶6}** Three affidavits were offered in support of the motion: two affidavits executed by Gregory Permar, the first executed on September 13, 2022, where he is identified as a Director of Collections and Fraud Strategy of Fair Square Financial, LLC ("Fair Square") and the second executed on June 27, 2024, where he is identified as a senior director of collections for Ally Financial, Inc. ("Ally"); and the affidavit of Joe Romney, Appellee's senior manager performance management, executed on July 17, 2024.

**{¶7}** The following facts are taken from the affidavits, the attachments thereto, and the attachments to the complaint. BOM issued a credit card in Appellant's name on May 17, 2021. The credit card was subject to a cardmember agreement, which, according to Permar, was "provided to [Appellant] at or near the time the Account was opened." (2024 Permar Aff., ¶ 8.) Purchases and payments were posted to the account, with the last payment made on December 6, 2021. The balance due and owing was $1,034.79.

**{¶8}** The cardmember agreement reads in relevant part:

> This document, along with the Account Summary Table enclosed with your credit card, together constitute our Cardmember Agreement (the "**Agreement**") that establishes the terms of your credit card account ("**Account**") with us. Please read it carefully and keep it for your records. You accept this Agreement if you do not cancel your Account within 30 days after receiving a Card, or when you or an Authorized User use the Account.

Case No. 24 MO 0018

(Emphasis in original.)

{¶9}    The cardmember agreement contains the following arbitration clause:

**<u>ARBITRATION AND WAIVER OF JURY TRIAL</u>**

**THIS AGREEMENT PROVIDES FOR BINDING ARBITRATION AND WAIVER OF JURY TRIAL.**

**BY ACCEPTING THE CARDMEMBER AGREEMENT, YOU AGREE TO THIS ARBITRATION AND WAIVER OF JURY TRIAL (THE "ARBITRATION PROVISION"), AND FURTHER ACKNOWLEDGE AND AGREE THAT YOU ARE WAIVING THE FOLLOWING RIGHTS, AS MORE FULLY DESCRIBED IN THIS ARBITRATION PROVISION:**

**(A) YOU WAIVE THE RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST US;**

**(B) YOU WAIVE THE RIGHT TO HAVE A COURT OTHER THAN A SMALL CLAIMS TRIBUNAL RESOLVE ANY DISPUTE AGAINST US; AND**

**(C) YOU WAIVE THE RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST US.**

. . .

Accordingly, all disputes against us and/or related third parties shall be resolved by binding arbitration only.  Disputes shall be resolved on an individual basis with you.  Therefore, the arbitrator shall not have the power to conduct class action arbitration or to consolidate claims of multiple parties; that is, the arbitrator shall not allow you to serve as a representative,

<u>Case No. 24 MO 0018</u>

as a private attorney general, or in any other representative capacity for others in the arbitration.

If either you or we elect to pursue any Claim by either you or us against the other, then the Claim shall be resolved exclusively by arbitration. Alternatively, you or we may pursue a Claim within the jurisdiction of the small claims court in your home jurisdiction; provided, however, that the action remains in that court, is made on behalf of or against you only, and is not made part of a class action, private attorney general action or other representative or collective action.

. . .

For purposes of this Arbitration Provision, "Claim" means any claim, dispute or controversy arising from or relating in any way to this Agreement or your Account, or their establishment, or any transaction or activity on your Account, including (without limitation) Claims based on contract, tort (including intentional torts), fraud, agency, negligence, statutory or regulatory provisions or any other source of law (except as otherwise specifically provided in this Agreement). Claims regarding the applicability of this arbitration provision or the validity of the entire Agreement shall be resolved exclusively by arbitration except that any challenge to the enforceability or validity of the class action waiver above shall be decided only by a court. The term "you" includes yourself, any authorized user on the Account, and any of your agents, beneficiaries or assigns, or anyone acting on behalf of the foregoing. The term "we" or "us" includes our employees, parents, subsidiaries, affiliates, beneficiaries, agents (people who work for us but are not our employees, such as those who help us in originating and servicing your Loan) and assigns, and to the extent included in a proceeding in which we are a party, our service providers and marketing partners. You agree that any agents retained by us, the operator of the website where you submitted your application, and the purchaser(s) of any

balances of your Account are express third-party beneficiaries of this Arbitration Provision, and are entitled to enforce it to the same extent as if they were a party to this Agreement.

(Emphasis in original.)

{¶10}  According to Permar, BOM transferred all of its interest in Appellant's credit card account to Fair Square Financial, LLC dba Ollo Card Services ("Fair Square") on August 1, 2022.  Fair Square was previously acquired by Ally on December 1, 2021. "FSF" (Fair Square) and "Ally" are used interchangeably throughout the business records. Specifically, the 2024 Permar affidavit reads, "[a]ccording to Ally's records, on August 1, 2022, BOM transferred and assigned all rights, title, and interest in [Appellant's] account to [Fair Square]." (2024 Permar Aff., ¶ 11.)

{¶11}  There is no business record attached to the 2024 Permar affidavit to establish the transfer of Appellant's account from BOM to Fair Square.  However, a "loan account assignment" is attached to the complaint, which transfers all rights and title to the accounts listed in an attachment to the agreement from BOM to Fair Square. The attachment identifies the transferred accounts as "[t]he individual Accounts described in the final electronic file named FSF Debt Sale File 202208.xlsx and delivered by [BOM] to [Fair Square] on August 1, 2022, the same deemed attached hereto by this reference."

{¶12}  Less than one month later on August 29, 2022, Fair Square sold its interest in Appellant's credit card account to Appellee as part of a portfolio of charged-off accounts.  The 2024 Permar affidavit reads the account was sold to "Midland Funding, LLC," but the bill of sale and closing statement attached to the affidavit establish the transfer of "Ally Credit Card Debt Sale File 202208" from Fair Square to Appellee.  The Romney affidavit confirms Appellee purchased Appellant's account from Fair Square on August 29, 2022.

{¶13}  Several credit card statements identifying Appellant as the cardholder are attached to the Romney affidavit.  The credit card statements reflect charges and payments made on the credit card account.

{¶14}  The 2022 Permar affidavit was executed in conjunction with the sale from Fair Square to Appellee.  The affidavit reads in relevant part, "[i]n connection with the sale

of Accounts, electronic and other records were transferred to or otherwise made available to the Buyer (the "Transferred Records") . . . To the extent that the Transferred Records include records that were prepared by a third party, they are records that were incorporated into the records of [Fair Square] as a business record and the accuracy of such records are relied upon by [Fair Square] in the ordinary course of business." (2022 Permar Aff., ¶ 6.) As previously stated, there are no business records related to the BOM to Fair Square transfer attached to the 2022 Permar affidavit, but the "loan account assignment" is attached to the complaint.

{¶15} In Appellant's response in opposition to the motion to stay and compel arbitration, she does not argue the collection claim and counterclaim are not arbitrable. In other words, she concedes the collection claim and counterclaim fall within the ambit of the arbitration clause. Appellant argues instead neither she nor Appellee is a party to the cardmember agreement, which includes the arbitration clause.

{¶16} First, Appellant argues Appellee does not have standing to stay the civil action or enforce the arbitration clause because there is no evidence establishing Appellee was an assign of BOM. Appellant relies on Permar's failure to attach business records establishing BOM's assignment of her credit card account to Fair Square to either of his affidavits.

{¶17} Next, Appellant argues Permar has no personal knowledge of BOM's operations and could not warrant that a cardmember agreement had been provided to Appellant. Appellant attached her own affidavit to the opposition brief, in which she avers she did not receive a copy of the cardmember agreement prior to receiving the copy attached to Appellee's motion to stay the proceedings and compel arbitration. As a consequence, she contends she could not accept the terms of an agreement that she did not read, and cannot be contractually bound by it.

{¶18} In its reply brief, Appellee argues the evidence in the record establishes it was an assign of BOM, with the authority to enforce the arbitration clause in the cardmember agreement. Appellee further argues Appellant does not deny using the credit card, and her use of the card renders her a party to the cardmember agreement by operation of law and the terms of the credit card agreement.

Case No. 24 MO 0018

{¶19} On September 24, 2024, the trial court summarily granted Appellee's motion to stay the case and compel arbitration. As Appellee's motion sought alternative remedies, the trial court did not consider the motion to dismiss the counterclaim. This timely appeal followed.

## ANALYSIS

## ASSIGNMENT OF ERROR NO. 1

**THE TRIAL COURT ERRED IN GRANTING PLAINTIFF MIDLAND CREDIT MANAGEMENT, INC.'S MOTION TO COMPEL ARBITRATION AND STAYING THE TRIAL COURT CASE.**

{¶20} "[T]he standard of review for a trial court's ruling on a motion to stay and compel arbitration depends on the type of questions raised in the challenge." *Carapellotti v. Breisch & Crowley*, 2018-Ohio-3977, ¶ 16 (7th Dist.), citing *Wisniewski v. Marek Builders, Inc.*, 2017-Ohio-1035, ¶ 5 (8th Dist.). "[A] trial court's grant or denial of a stay based solely upon questions of law is reviewed under a de novo standard." *Eric Petroleum Corp. v. Ascent Resources-Utica, LLC*, 2022-Ohio-3619, ¶ 25 (7th Dist.) "The existence of a contract is a question of law and is reviewed de novo on appeal." *Carapellotti* at ¶ 16. "[T]he issue of whether a party has agreed to submit an issue to arbitration is reviewed under a de novo standard." *Id.* (reviewing de novo whether customer's signatures on checks to material supplier constituted acceptance of arbitration clause in unsigned purchase agreement); *Partnership v. Home S. & L. Co. of Youngstown*, 2014-Ohio-2704, ¶ 13 (11th Dist.) ("This court reviews de novo a trial court's legal conclusion as to whether a party is contractually bound by an arbitration clause.") Whether a party has established standing to bring an action before the court is a question of law, which we also review de novo. *Moore v. Middletown*, 2012-Ohio-3897, ¶ 20.

{¶21} An abuse of discretion standard applies in limited circumstances, for instance, a determination that a party has waived its right to arbitrate a given dispute. *Internatl. Union of Operating Engineers, Local 18 v. Norris Bros. Co.*, 2015-Ohio-1140, ¶ 21 (8th Dist.). Where the trial court renders a decision on a non-dispositive issue or is required to weigh evidence or assess credibility, we review the lower court's decision for

an abuse of discretion. Abuse of discretion implies that the trial court's attitude was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶22} R.C. 2711.01, captioned "Provision in a contract for arbitration or controversies valid; exceptions," read in relevant part:

> (A) A provision in any written contract, except as provided in division (B) of this section, to settle by arbitration a controversy that subsequently arises out of the contract, or out of the refusal to perform the whole or any part of the contract, or any agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, or arising after the agreement to submit, from a relationship then existing between them or that they simultaneously create, shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract.

{¶23} The Ohio statutory scheme governing agreements to arbitrate in R.C. Chapter 2711 is patterned after the federal scheme, to the extent that Ohio also recognizes two procedural mechanisms for requiring a party to abide by the written contractual term. " 'The Ohio Arbitration Act allows for either direct enforcement of such agreements through an order to compel arbitration under R.C. 2711.03, or indirect enforcement through an order staying proceedings under R.C. 2711.02.' " *Dodeka v. Keith*, 2012-Ohio-6216, ¶ 21 (11th Dist.), quoting *Brumm v. McDonald & Company Securities, Inc.*, 78 Ohio App.3d 96, 100 (4th Dist.1992). Under Ohio law, the two procedures are viewed as separate and distinct, so a party may choose to move for a stay, petition for an order to proceed to arbitration, or both. *Maestle v. Best Buy Co.*, 2003-Ohio-6465, ¶ 14, 18.

{¶24} R.C. 2711.02(B) reads in its entirety:

> If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is

referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration.

**{¶25}** " '[T]wo basic facts must be proven before a stay of the trial proceedings can be justified: (1) the existence of a valid written agreement to arbitrate disputes between the parties; and (2) the scope of the agreement is sufficiently broad to cover the specific issue which is the subject of the pending case.' " *Dodeka* at ¶ 25, quoting *Bratt Enterprises, Inc. v. Noble International LTD.*, 338 F.3d 609, 612 (6th Cir.2003). As previously stated, Appellant does not contend the substantive claims asserted in this case are outside the scope of the arbitration agreement, she challenges the existence of a valid written agreement to arbitrate between the parties.

**{¶26}** At the trial level, the party requesting the stay has the burden of proof regarding both the existence of the agreement to arbitrate and its basic scope. *Dodeka* at ¶ 26. In determining whether an enforceable agreement to arbitrate exists, state-law contract principles are applied. *Stepp v. NCR Corp.*, 494 F.Supp.2d 826, 831 (S.D.Ohio 2004).

**{¶27}** With respect to the motion to compel arbitration, R.C. 2711.03, which parrots the relevant language of 9 U.S.C. 4, reads in relevant part:

(A) The party aggrieved by the alleged failure of another to perform under a written agreement for arbitration may petition any court of common pleas having jurisdiction of the party so failing to perform for an order directing that the arbitration proceed in the manner provided for in the written agreement. Five days' notice in writing of that petition shall be served upon the party in default. Service of the notice shall be made in the manner provided for the service of a summons. The court shall hear the parties, and, upon being satisfied that the making of the agreement for arbitration or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the agreement.

Case No. 24 MO 0018

(B) If the making of the arbitration agreement or the failure to perform it is in issue in a petition filed under division (A) of this section, the court shall proceed summarily to the trial of that issue. If no jury trial is demanded as provided in this division, the court shall hear and determine that issue. Except as provided in division (C) of this section, if the issue of the making of the arbitration agreement or the failure to perform it is raised, either party, on or before the return day of the notice of the petition, may demand a jury trial of that issue. Upon the party's demand for a jury trial, the court shall make an order referring the issue to a jury called and impaneled in the manner provided in civil actions.

**{¶28}** Pursuant to the plain language of R.C. 2711.03(A), when a defendant petitions the trial court for an order compelling arbitration, "the trial court must determine that the arbitration agreement or failure to comply with the agreement is not an issue before compelling arbitration." *Cole v. Macy's, Inc.*, 2013-Ohio-4705, ¶ 7 (8th Dist.). " '[W]hen determining whether a trial is necessary under R.C. 2711.03, the relevant inquiry is whether a party has presented sufficient evidence challenging the validity or enforceability of the arbitration provision to require the trial court to proceed to trial before refusing to enforce the arbitration clause.' " *SW Acquisition Co. v. Akzo Nobel Paints, L.L.C.*, 2021-Ohio-309, ¶ 26 (8th Dist.), quoting *Garcia v. Wayne Homes, L.L.C.*, 2002-Ohio-1884, ¶ 29 (2d Dist.).

**{¶29}** The *Macy's* Court explained:

In this respect, courts have interwoven Civ. R. 56 summary judgment components to aid trial courts in determining whether the making of the arbitration agreement or failure to comply is an issue requiring the trial court to summarily conduct a trial on that issue. *Squires Constr. Co. v. Thomas*, 8th Dist. Cuyahoga No. 89609, 2008-Ohio-1406, ¶ 25. This interposing of standards does not alter the parties' respective burdens. The party challenging the arbitration agreement has the burden of "showing that under the prevailing law, he would be relieved of his contractual obligation to arbitrate if his allegations proved to be true." *Id.*, citing *Garcia v. Wayne*

Case No. 24 MO 0018

*Homes, L.L.C.*, 2d Dist. Clark No.2001 CA 53, 2002-Ohio-1884. The party moving for the trial, therefore, must set forth specific facts demonstrating that a genuine issue of material fact exists regarding the validity or enforceability of the agreement containing the arbitration provision. *Id.*

*Macy's* at ¶ 8.

{¶30} Neither party requested a jury trial or an evidentiary hearing on the motion. As a consequence, the trial court was the finder of fact.

{¶31} We first consider Appellant's argument that Appellee does not have standing to assert the motion to stay and compel arbitration. Ohio's common pleas courts are endowed with "original jurisdiction over all justiciable matters . . . as may be provided by law." Ohio Const., art. IV, § 4(B). Pursuant to R.C. 2305.01, courts of common pleas have "original jurisdiction in all civil cases in which the sum or matter in dispute exceeds the exclusive original jurisdiction of county courts."

{¶32} Subject-matter jurisdiction is the power of a court to entertain and adjudicate a particular class of cases. *Morrison v. Steiner*, 32 Ohio St.2d 86, 87 (1972). A court's subject-matter jurisdiction is determined without regard to the rights of the individual parties involved in a particular case. *State ex rel. Tubbs Jones v. Suster*, 84 Ohio St.3d 70, 75 (1998); *Handy v. Ins. Co.*, 37 Ohio St. 366, 370 (1881). A court's jurisdiction over a particular case refers to the court's authority to proceed or rule on a case that is within the court's subject-matter jurisdiction. *Pratts v. Hurley*, 2004-Ohio-1980, ¶ 12. This latter jurisdictional category involves consideration of the rights of the parties.

{¶33} "Standing is certainly a jurisdictional requirement; a party's lack of standing vitiates the party's ability to invoke the jurisdiction of a court — even a court of competent subject-matter jurisdiction — over the party's attempted action." *Bank of Am., N.A. v. Kuchta*, 2014-Ohio-4275, ¶ 22. "But an inquiry into a party's ability to invoke a court's jurisdiction speaks to jurisdiction over a particular case, not subject-matter jurisdiction." *Id.*

{¶34} A determination of standing necessarily looks to the rights of the individual parties to bring the action, as they must assert a personal stake in the outcome of the action in order to establish standing. *Ohio Pyro, Inc. v. Ohio Dept. of Commerce*, 115

2007-Ohio-5024, ¶ 27; *see also CapitalSource Bank v. Hnatiuk*, 2016-Ohio-3450, ¶ 22 (8th Dist.), quoting *Davet v. Sheehan*, 2014-Ohio-5694, ¶ 22 (8th Dist.) (" 'It is fundamental that a party commencing litigation must have standing to sue in order to present a justiciable controversy and invoke the jurisdiction of the common pleas court.' "). Lack of standing is a fundamental flaw requiring dismissal of the action. *Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 2012-Ohio-5017, ¶ 40.

**{¶35}** Traditional standing principles require the plaintiff to show that he or she has suffered an injury that is fairly traceable to the defendant's allegedly unlawful conduct, and likely to be redressed by the requested relief. *Moore v. Middletown*, 2012-Ohio-3897, ¶ 22, citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, (1992). In other words, to have standing, a plaintiff must have a personal stake in the outcome of the controversy and have suffered some concrete injury that is capable of resolution by the court. *Middletown v. Ferguson*, 25 Ohio St.3d 71, 75 (1986).

**{¶36}** In *SW Acquisition Co. v. Akzo Nobel Paints*, L.L.C., 2021-Ohio-309, ¶ 35 (8th Dist.), the Eighth District distinguished standing to assert a motion to enforce an arbitration agreement pursuant to R.C. 2711.03 from standing to pursue the substantive claims subject to arbitration. In that case, SWAC filed a complaint sounding in breach of contract and fraud against Akzo and PPG. The suit was predicated on a contract executed between Miller Bros. and Akzo. SWAC acquired Miller Bros. through Miller Bros.'s bankruptcy proceedings. PPG was the successor-in-interest to Akzo. PPG filed a motion to compel arbitration based on an arbitration clause in the contract between Miller Bros. (SWAC predecessor-in-interest) and Akzo (PPG's predecessor-in-interest), which was granted.

**{¶37}** Several years later, SWAC filed a complaint pursuant to R.C. 2911.03 to enforce the arbitration clause. Specifically, SWAC sought to enforce a provision in the arbitration agreement authorizing the common pleas court to select an arbitrator if the parties were unable to agree. PPG filed a motion to dismiss arguing SWAC lacked standing or should be judicially estopped from seeking the appointment of an arbitrator, because the fraud claim was not listed in Miller Bros.'s bankruptcy schedules and the breach of contract claim was assigned a monetary value of $0.00. Neither party disputed they were assigns of the original contracting parties.

Case No. 24 MO 0018

{¶38} The Eighth District enforced the arbitration agreement, reasoning SWAC's amended complaint set forth a single prayer for relief, that is, the appointment of an arbitrator, pursuant to R.C. 2711.03(A) and the mandatory arbitration provisions contained in the contract. Thus, the threshold issue before the trial court was whether SWAC had standing to seek enforcement of the arbitration provision in the contract. Because SWAC and PPG stipulated they were parties to the contract through succession, the Eighth District concluded SWAC had standing to file the motion to enforce arbitration agreement. However, the Eighth District opined PPG's arguments relating to SWAC's standing to assert the substantive claims of breach of contract and fraud based on Miller Bros.'s bankruptcy proceedings were within the ambit of the arbitration clause.

{¶39} According to Permar's 2024 affidavit, BOM transferred and assigned all rights, title, and interest in Appellee's credit card account to Fair Square on August 1, 2022. According to the loan account assignment dated August 1, 2022, which is attached to the complaint, BOM transferred and assigned to Fair Square "each of the Loan Accounts listed on the loan schedule ("Loan Account Schedule") attached [to the loan account assignment.]" The attachment reads in its entirety, "[t]he individual Accounts described in the final electronic file named FSF Debt Sale File 202208.xlsx and delivered by [BOM] to [Fair Square] on August 1, 2022, the same deemed attached hereto by this reference."

{¶40} According to Permar's 2024 affidavit, Fair Square sold its interest in Appellant's credit card account to Appellee as part of a portfolio of charged-off accounts roughly one month later on August 29, 2022. Attached to both of the Permar affidavits is a bill of sale establishing the transfer of "the Accounts identified in the Sale File named Ally Credit Card Debt Sale File 202208 and dated on or about August 22, 2022" from Fair Square to Appellee. An attachment to the bill of sale identifies Appellant's credit card account as being among the accounts transferred from Fair Square to Appellee. The document reads in relevant part:

> Account information provided by [Fair Square] pursuant to the Bill of Sale/Assignment of Accounts transferred on or about 08/29/2022 in connection with the sale of accounts from [Fair Square] to [Appellee].

Case No. 24 MO 0018

Ally Credit Card Debt Sale File 202208

{¶41} Based on the foregoing information in the record, we find Appellee is an assign of BOM for the purpose of its standing to file the motion to stay and compel arbitration. Although the loan account assignment was not attached to either of the Permar affidavits, it establishes Appellee's standing to assert the motion to stay and compel arbitration.

{¶42} Appellant cites Civil Rule 56(E) for the proposition that Permar's failure to attach the loan account assignment to either of his affidavits is fatal to Appellee's standing to assert the motion to stay and compel arbitration. Ohio courts have recognized an affiant's reliance on documents beyond those attached to the affidavit violates Civ.R. 56(E), which reads "[s]worn or certified copies of all papers or parts of papers referred to in an affidavit *shall* be attached to or served with the affidavit." (Emphasis added.) *Deutsche Bank Natl. Tr. Co. v. Dvorak*, 2014-Ohio-4652, ¶ 13 (9th Dist.), citing Civ.R. 56(E) (affiant may not aver to content of business record not attached to affidavit).

{¶43} We recognize Ohio appellate courts considering the necessity of a trial pursuant to R.C. 2711.03 have "interwoven Civ.R. 56 summary judgment *components* to aid trial courts in determining whether the making of the arbitration agreement or failure to comply is an issue requiring the trial court to summarily conduct a trial on that issue." *Macy's, Inc.*, 2013-Ohio-4705, at ¶ 8 (Emphasis added). Nonetheless, we find strict adherence to Civil Rule 56(E) is not required here, as Rule 56 governs the resolution of the merits in a civil case. Here, we are not addressing the substantive claims, but instead the threshold question of standing to stay the civil action and enforce the arbitration agreement.

{¶44} In a Rule 56 motion, the trial court is asked to make a final determination on the merits as a matter of law. Here, the trial court need only be "satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration" with respect to the motion for stay, R.C. 2711.02(B), and "satisfied that the making of the agreement for arbitration or the failure to comply with the agreement is not in issue" with respect to the motion to enforce, R.C. 2711.03(A). As the trial court's decision in this matter resolves the threshold issue of standing, rather than the merits of the parties' claims, we conclude a rigid application of Rule 56(E) is not required.

Case No. 24 MO 0018

**{¶45}** Accordingly, we find the trial court did not err in concluding there was sufficient evidence in the record to establish Appellee is an assign of BOM and has standing to assert the motion to stay and compel arbitration. We further find Appellant's standing to assert its substantive claim falls within the ambit of the arbitration clause. In other words, Appellant may argue Appellee does not have standing to assert the action on the account before the arbitrator.

**{¶46}** Next, we must determine whether Appellant is a party to the cardmember agreement. " '[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' " *Council of Smaller Enter. v. Gates, McDonald & Co.*, 80 Ohio St.3d 661, 665 (1998), quoting *AT & T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986). "While arbitration is encouraged as a form of dispute resolution, the policy favoring arbitration does not trump the constitutional right to seek redress in court." *Peters v. Columbus Steel Castings Co.*, 2007-Ohio-4787, ¶ 8.

**{¶47}** The elements of a contract include the following: an offer, an acceptance, contractual capacity, consideration (the bargained-for legal benefit or detriment), a manifestation of mutual assent, and legality of object and of consideration. *Kostelnik v. Helper*, 2002-Ohio-2985, ¶ 16. "The law is clear that to constitute a valid contract, there must be a meeting of the minds of the parties, and there must be an offer on the one side and an acceptance on the other." *Noroski v. Fallet*, 2 Ohio St.3d 77, 79 (1982).

**{¶48}** In Ohio, credit card agreements are contracts whereby the issuance and use of a credit card creates a legally binding agreement. *JPMorgan Chase Bank, N.A. v. Gallabrese*, 2025-Ohio-733, ¶ 13 (7th Dist.). In support of the motion to stay and compel arbitration, Appellee submitted credit card statements attached to the Romney affidavit, which establish charges and payments made to an account in Appellant's name. In her appellate brief, Appellant counters, "there is no admissible evidence of the identity of the agreement, and all allegations in [Appellee's] Complaint have been denied in [Appellant's] Answer." (Appellant's Brf., p. 23.)

**{¶49}** We consider Appellant's argument de novo because it presents a discrete question of law: In resolving a motion to stay and compel arbitration, is an unsworn denial

Case No. 24 MO 0018

in an answer sufficient evidence to create a question for the factfinder where the credit card company has offered evidence of Appellant's use of the credit card?

**{¶50}** " '[W]hen determining whether a trial is necessary under R.C. 2711.03, the relevant inquiry is whether a party has presented sufficient evidence challenging the validity or enforceability of the arbitration provision to require the trial court to proceed to trial before refusing to enforce the arbitration clause.' " *Akzo*, 2021-Ohio-309, at ¶ 26 (8th Dist.), quoting *Garcia*, 2002-Ohio-1884, at ¶ 29 (2d Dist.). In Appellant's affidavit attached to her opposition brief, she denies receiving the credit card agreement, but she does not deny the receipt and use of the credit card, or challenge the validity of the charges or the balance remaining on the account. The uncontroverted evidence in the record, including numerous credit card statements bearing Appellant's name and documenting charges and payments over the course of several months, establishes Appellant's use of the credit card. Rather than offering evidence that she did not use the credit card, Appellant relies on an unsworn denial in her answer. However, an unsworn denial in an answer is insufficient to contravene the evidence in record demonstrating Appellant's use of the credit card.

**{¶51}** The Eighth District Court of Appeals affirmed the entry of summary judgment in favor of a credit card company on identical facts in *Chase Bank USA, NA v. Lopez*, 2008-Ohio-6000 (8th Dist.) In that case, Chase moved for summary judgment in an action on an account based on Lopez's use of the credit card. Chase attached to its motion both the cardmember agreement and credit card statements evincing use of the card. The sole attachment to Lopez's opposition brief was an affidavit in which Lopez denied receiving the cardmember agreement. In affirming summary judgment in favor of Chase, the Eighth District observed:

> The affidavit attached in support of Lopez's response in opposition to the motion for summary judgment merely denies receipt of the cardmember agreement. The affidavit does not contain any sworn statement of Lopez that he never used the card, that he denied making the charges set forth in the eleven statements constituting "Exhibit C" attached as documentary evidence in support of the motion for summary judgment, or that he denied making some payments on the account.

Case No. 24 MO 0018

*Id.* at ¶ 13.

{¶52} Although *Lopez* was a summary judgment case, the Eighth District's reasoning applies with equal force here. Appellant has essentially conceded that she used the credit card over the course of several months. She has offered no sworn denial of her use of the credit card, nor any evidence that she is not responsible for the charges and payments made to the account. Therefore, she has presented no evidence challenging the validity or enforceability of the arbitration provision. Regardless of whether she received a copy of the cardmember agreement, we find she accepted its terms by operation of law and the plain language of the cardmember agreement, through her use of the credit card.

{¶53} However, Appellant argues her use of the credit card alone is insufficient to bind her to the terms of the cardmember agreement because there is no evidence she ever received a copy of the agreement. Appellant cites no case law for the proposition that Appellee must demonstrate Appellant received a copy of the cardmember agreement in order to render her a party to its terms.

{¶54} More specifically, Appellant challenges Permar's averment that a copy of the cardmember agreement was provided to her at or near the time the account was opened. She argues Permar's attestation constitutes hearsay, because he did not work for BOM when the credit card was issued and cannot attest to BOM's business practices at the time.

{¶55} Under the adoptive business records exception to the hearsay rule, Evid.R. 803(6) " 'does not require the witness whose testimony establishes the foundation for a business record to have personal knowledge of the exact circumstances of preparation and production of the document or of the transaction giving rise to the record.' " *MidFirst Bank v. Cicoretti*, 2023-Ohio-3599, ¶ 23 (7th Dist.), quoting *Green Tree Servicing, L.L.C. v. Roberts*, 2013-Ohio-5362, ¶ 30 (12th Dist.). Instead, "Evid.R. 803(6) 'permits exhibits to be admitted as business records of an entity even when the entity was not the maker of the records, so long as the other requirements of [Evid.R. 803(6)] are met and circumstances indicate the records are trustworthy.' " *MidFirst* at ¶ 23, quoting *Ohio Receivables, L.L.C. v. Dallariva*, 2012-Ohio-3165, ¶ 20 (10th Dist.).

Case No. 24 MO 0018

**{¶56}** We recognized in *PNC Mtge., a Div. of PNC Bank, Natl. Assn. v. Krynicki*, 2017-Ohio-808 (7th Dist.), that requiring a foundational witness to have personally participated in the creation of each business record attached to an affidavit would "eviscerate the business records exception." *Id.* at ¶ 13. In this case, the date of the cardmember agreement is January 13, 2020, which predates the issuance of the credit card. As a consequence, we find the cardmember agreement is properly authenticated as an adoptive business record.

**{¶57}** The cardmember agreement plainly states the agreement and the account summary table contain binding terms governing the use of the credit card. Therefore, the trial court was not required to rely on the Permar affidavit stating Appellant received a copy of the cardmember agreement. Further, the cardmember agreement suggests a copy of the agreement and the account summary table were enclosed with the credit card.

**{¶58}** Accordingly, we find Appellant is a party to the cardmember agreement by virtue of her use of the credit card. Assuming arguendo Appellant's use of the credit card alone is insufficient to bind her to the terms of the cardmember agreement, we find the agreement is properly authenticated as an adoptive business record, it establishes that she is bound by its terms, and it suggests a copy, along with the account summary table, were provided to Appellant with the credit card.

**{¶59}** In summary, we find Appellee has standing to assert the motion to stay and compel arbitration and Appellant is a party to the cardmember agreement. Therefore, we find Appellant's first assignment of error has no merit.

## ASSIGNMENT OF ERROR NO. 2

**TO THE EXTENT IT MAY HAVE DONE SO, THE TRIAL COURT ERRED BY GRANTING PLAINTIFF MIDLAND CREDIT MANAGEMENT, INC.'S ALTERNATIVE MOTION TO "STRIKE CLASS ALLEGATIONS," WHICH WAS INCLUDED WITH PLAINTIFF'S MOTION TO COMPEL ARBITRATION.**

**{¶60}** Appellee's motion sought alternative forms of relief, either to stay the civil case and enforce the arbitration agreement or, if the trial court retained jurisdiction over

the collection claim and counterclaim, to strike the class action allegations. The judgment entry granting the motion to stay and enforce the arbitration agreement rendered the request for alternative relief moot. Accordingly, Appellant's second assignment of error has no merit.

## CONCLUSION

{¶61} For the foregoing reasons, the judgment entry of the trial court staying the matter and enforcing the arbitration agreement is affirmed.

Robb, P.J., concurs.

Hanni, J., dissents with dissenting opinion.

Hanni, J., dissenting.

{¶62} With regard and respect to my colleagues, I must dissent from the majority opinion. First, I would find that Appellee did not demonstrate that it is an assign of the original creditor. The Romney affidavit attached the bill of sale of a portfolio of credit card accounts from Fair Square/Ally to Appellee. (Romney Aff. Ex. 1). Thus, there is clear evidence that Fair Square/Ally sold certain accounts to Appellee. But the same evidence is not present for the alleged sale from the BOM to Fair Square/Ally.

{¶63} "In an action on an account, when an assignee is attempting to collect on an account in filing a complaint, the assignee must 'allege and prove the assignment.'" *Liberty Credit Servs. Assignee v. Yonker*, 2013-Ohio-3976 (11th Dist.), quoting *Zwick v. Zwick*, 103 Ohio App. 83, 84 (8th Dist.1986). I would find that there is no documentary evidence of a bill of sale from the BOM to any other entity. This part of the sale/transfer of the account is necessary to prove the chain of transfer.

{¶64} In addressing this issue, the Sixth District has explained:

"To establish the existence of a valid assignment agreement for purposes of summary judgment, courts have required more than an averment by an assignee that it has acquired all rights, title, and interest in the account." *Midland Funding LLC v. Farrell*, 1st Dist. Hamilton No. C-120674, 2013-Ohio-5509, ¶ 14. See *EMCC Invest. Ventures, LLC v. Rowe*, 11th Dist. Portage No. 2011-P-0053, 2012-Ohio-4462, ¶ 26 (finding evidence insufficient to establish chain of title on account where alleged assignee presented affidavit of employee who averred that assignee had acquired all rights, title, and interest in the account, but did not present bill of sale or similar document detailing terms of assignment).

*Midland Funding, LLC v. Coleman*, 2019-Ohio-432, ¶ 16 (6th Dist.).

{¶65} In *Coleman*, the court found that Midland Funding's assertion that Coleman's account was assigned to it was only supported by an averment in an affidavit indicating that Midland Funding acquired all rights, title, and interest in the account. *Id.* at ¶ 17. It noted that Midland Funding did not provide a bill of sale or similar document

detailing the terms of the assignment. *Id.* For these reasons, the Sixth District found there was insufficient evidence to establish the existence of a valid assignment agreement for purposes of summary judgment. *Id.*, citing *Midland Funding, LLC v. Biehl*, 2013-Ohio-4150, ¶ 24 (5th Dist.) (reversing summary judgment ruling in favor of Midland Funding and finding affidavit averring assignment, copies of credit card statements, and one-page bill of sale insufficient evidence that debtor's account was among those assigned to Midland); *Midland Funding, LLC v. Snedeker*, 2014-Ohio-887, ¶ 21 (5th Dist.).

**{¶66}** Similarly, because there is no evidence, such as a bill of sale, specifically showing that the BOM sold Appellant's account to Fair Square/Ally, I would find Appellee cannot show the needed chain of title at this point in time.

**{¶67}** Second, I would find there are questions surrounding whether Appellant received the cardmember agreement containing the arbitration agreement and surrounding her use of the credit card. In her answer, Appellant denied that the BOM issued the credit card to her and denied making purchases on it. (Answer ¶ 3, 5). And in her affidavit, Appellant denied ever receiving the cardmember agreement. (Bowers Aff. ¶ 2). Therefore, I would conclude questions exist concerning whether the BOM actually provided Appellant with a copy of cardmember agreement. Appellant averred that the first time she saw this document was when Appellee attached it to its motion to compel arbitration. And while Permar states in his affidavit that the cardmember agreement was provided to Appellant at or near the time the account was opened, he has no documentary basis to support this conclusion.

**{¶68}** Based on the above, I would reverse the trial court's judgment.

[Cite as *Midland Credit Mgt. Inc. v. Bowers*, 2025-Ohio-2578.]

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Monroe County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**