[Cite as *Midland Credit Mgt. Inc. v. Bowers*, 2026-Ohio-1017.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MONROE COUNTY

MIDLAND CREDIT MANAGEMENT, INC., ET AL.,

Plaintiff and Counterclaim Defendant-Appellees,

v.

HOLLY BOWERS,

Defendant and Counterclaim Plaintiff-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 24 MO 0018

---

Application for Reconsideration and En Banc Consideration

**BEFORE:**
Katelyn Dickey, Carol Ann Robb, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Denied.

---

*Atty. H. Toby Schisler* and *Atty. Sarah E. Sessler,* Dinsmore & Shohl LLP, for Plaintiff and Counterclaim Defendant-Appellees and

*Atty. Laura K. McDowall,* McDowall Co., LPA*, Atty. Anand N. Misra,* The Misra Law Firm, LLC and *Atty. Robert S. Belovich,* Robert S. Belovich Attorney LLC, for Defendant and Counterclaim Plaintiff-Appellant.

Dated: March 24, 2026

**PER CURIAM.**

**{¶1}** On July 31, 2025, Defendant and Counterclaim Plaintiff-Appellant, Holly Bowers filed an application for reconsideration pursuant to App.R. 26(A)(1) and for en banc reconsideration pursuant to App.R. 26(A)(2) of our July 21, 2025 opinion and judgment entry in *Midland Credit Mgt., Inc. v. Bowers*, 2025-Ohio-2578 (7th Dist.). Plaintiff and Counterclaim Defendant-Appellee, Midland Credit Management Inc., filed its brief in opposition on August 11, 2025. Appellant filed her reply brief on August 18, 2025.

**{¶2}** In this action on a credit card account, we affirmed the judgment entry of the Monroe County Court of Common Pleas staying the case and enforcing the arbitration clause in the Cardmember Agreement ("cardmember agreement"). We concluded the trial court did not err in finding Appellee had standing to enforce the arbitration clause as Appellee was a successor-in-interest based on a valid assignment. We further found Appellant was a party to the arbitration agreement based on her use of the credit card and evidence in the record establishing her receipt of the cardmember agreement.

**{¶3}** We begin our analysis with a review of the facts and Appellant's arguments on the merits. The facts in our merits decision were taken from three affidavits offered by Appellee in support of the motions (two are relevant here), and the affidavit of Appellant, which was attached to her opposition brief to the motions.

**{¶4}** Bank of Missouri ("BOM") issued a credit card in Appellant's name on May 17, 2021. Purchases and payments were posted to the account, with the last payment made on December 6, 2021. The balance due and owing was $1,034.79.

**{¶5}** The credit card was subject to the cardmember agreement. According to the 2024 affidavit of Gregory Permar, a senior director of collections for Ally Financial, Inc. ("Ally"), which is Appellee's predecessor-in-interest, a copy of the cardmember agreement was "provided to [Appellant] at or near the time the Account was opened." (2024 Permar Aff., ¶ 8). Further, the cardmember agreement reads, in relevant part, "[t]his document, along with the Account Summary Table enclosed with your credit card, together constitute our Cardmember Agreement (the "Agreement") that establishes the terms of your credit card account."

**{¶6}** BOM transferred all of its interest in Appellant's credit card account to Fair Square Financial, LLC dba Ollo Card Services ("Fair Square") on August 1, 2022. Fair Square was previously acquired by Ally on December 1, 2021. "FSF" (Fair Square) and "Ally" are used interchangeably throughout the business records. Specifically, the 2024 Permar affidavit reads, "[a]ccording to Ally's records, on August 1, 2022, BOM transferred and assigned all rights, title, and interest in [Appellant's] account to [Fair Square]." (2024 Permar Aff., ¶ 11).

**{¶7}** There is no business record attached to the 2024 Permar affidavit to establish the transfer of Appellant's account from BOM to Fair Square. However, a "loan account assignment" is attached to the complaint, which transfers all rights and title to the accounts listed in an attachment to the agreement from BOM to Fair Square. The attachment identifies the transferred accounts as "[t]he individual Accounts described in the final electronic file named FSF Debt Sale File 202208.xlsx and delivered by [BOM] to [Fair Square] on August 1, 2022, the same deemed attached hereto by this reference," and includes a reference to Appellant's account.

**{¶8}** On August 29, 2022, less than one month after BOM transferred all if its interest in Appellant's credit card account to Fair Square, Fair Square sold the same to Appellee as part of a portfolio of charged-off accounts. Although the 2024 Permar affidavit reads the account was sold to "Midland Funding, LLC," the bill of sale and closing statement attached to the affidavit establish the transfer of "Ally Credit Card Debt Sale File 202208" from Fair Square to Appellee. The affidavit of Joe Romney, Appellee's senior manager performance management, confirms Appellee purchased Appellant's account from Fair Square on August 29, 2022.

**{¶9}** In Appellant's opposition brief to the motions, Appellant asserts procedural challenges to the evidence offered by Appellee. Appellant argues there is no documentary evidence attached to the 2024 Permar affidavit to demonstrate BOM assigned Appellant's account to Fair Square. Appellant relies on Civil Rule 56(E) for the rule that "[s]worn or certified copies of all papers or parts of papers referred to in an affidavit shall be attached to or served with the affidavit." In the absence of a valid assignment, Appellant argues Appellee did not have standing to enforce the arbitration agreement.

{¶10} Next, Appellant argues Permar had no personal knowledge regarding Appellant's receipt of the cardmember agreement, because Permar was not employed by BOM, the original credit card issuer. Appellant further argues Appellee could not rely on BOM's business records because the cardmember agreement did not comport with Evid.R. 803(6), the adoptive business records exception to the rule against hearsay. Finally, assuming arguendo the cardmember agreement was properly authenticated by Permar, Appellant argues the cardmember agreement did not establish it was sent to Appellant.

{¶11} Finally, Appellant advances two factual arguments in support of her assertion that she was not a party to the cardmember agreement. First, Appellant asserts she did not receive a copy of the cardmember agreement, therefore she could not assent to its terms. Second, Appellant denies use of the credit card. Although Appellant avers in her affidavit that she had not received a copy of the cardmember agreement prior to this litigation, Appellant relies on her general denial of the use of the credit card in her answer.

{¶12} Our decision affirming the trial court's decision staying the matter and enforcing the arbitration agreement turned in large measure on the procedural posture of the motions. Because neither party had requested a jury trial or an evidentiary hearing, we opined the parties had agreed to submit any issue of material fact to the trial court on briefs.

{¶13} We rejected Appellant's argument that the 2024 Permar affidavit must satisfy the strict requirements of Civ.R. 56(E) for two reasons. First, the motions were not dispositive, that is, they did not address the merits of Appellee's claim. Second, the evidentiary standard on motions to stay and enforce arbitration required the trial court to be "satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration."

{¶14} Although the loan assignment agreement was attached to the complaint, not the 2024 Permar affidavit, we opined it was evidence in the record upon which the trial court relied as evidence of a valid assignment. With respect to the conflict between Appellant's averment in her affidavit that she had not received the cardmember agreement, and Permar's averment that the cardmember agreement was "provided to

[Appellant] at or near the time the Account was opened," we found the adoptive business records exception applied to the cardmember agreement and its text could be interpreted to establish it was provided to Appellant.

## APPLICATION FOR RECONSIDERATION

{¶15} App.R. 26(A)(1) provides for the filing of an application for reconsideration, but includes no guidelines to be used in the determination of whether a decision is to be reconsidered and changed. *D.G. v. M.G.G.*, 2019-Ohio-1190, ¶ 2 (7th Dist.). The test generally applied is whether the application for reconsideration calls to the attention of the court an obvious error in its decision or raises an issue for our consideration that was either not at all or was not fully considered by us when it should have been. *Id.*

{¶16} "An application for reconsideration is not designed for use in instances where a party simply disagrees with the conclusions reached and the logic used by an appellate court." *Martin v. Taylor*, 2024-Ohio-3207, ¶ 1 (7th Dist.). Rather, "App.R. 26(A)(1) provides a mechanism by which a party may prevent miscarriages of justice that could arise when an appellate court makes an obvious error or renders an unsupportable decision under the law." *Id.*

{¶17} Appellant's arguments for reconsideration, which are the same arguments advanced in her merits brief, are largely founded on the admissibility of Appellee's evidence rather than the weight afforded to it by the trial court. Appellant argues the affidavits and evidence offered by Appellee do not satisfy the requirements of Civ.R. 56(E).

{¶18} Appellant cites federal procedural law regarding the application of Civil Rule 56 to the motions to stay and to enforce arbitration. In her appellate brief and her opposition brief to the motions in the trial court, Appellant argues, "courts treat the facts as they would in ruling on a summary judgment motion." *Raasch v. NCR Corp.*, 254 F.Supp.2d 847, 851 (S.D.Ohio 2003). The full quote reads, "courts treat the facts as they would in ruling on a summary judgment motion, construing all facts and reasonable inferences that can be drawn therefrom in a light most favorable to the non-moving party." *Id.*, citing *Goodman v. ESPE America, Inc.*, 2001 WL 64749, at *1 (E.D.Pa. Jan. 19, 2001).

**{¶19}** First, the motions to compel arbitration in *Raasch* and *Goodman* were predicated exclusively on the Federal Arbitration Act, 9 U.S.C. § 1, et seq. Second, Appellant cites no case law for her assertion that Civil Rule 56, specifically 56(E), must be applied to motions for stay and to compel arbitration, which are not asserted under the rubric of Civil Rule 56.

**{¶20}** Appellant further contends we have suspended the application of the Rules of Evidence. However, Appellant fails to identify the specific rules we have allegedly refused to apply, other than the rule against hearsay, which we specifically addressed in our merits opinion.

**{¶21}** Although not addressed by Appellant, our decision turned on our conclusion that the motions were submitted to the trial court as the fact finder based on the failure of either party to request a jury trial or an evidentiary hearing. The Ohio Supreme Court has opined an evidentiary hearing is discretionary on a motion to stay filed pursuant to R.C. 2711.02. *Maestle v. Best Buy Co.*, 2003-Ohio-6465, ¶ 19. Although Ohio intermediate appellate courts have recognized the statutory right to a hearing on a motion to compel filed pursuant to R.C. 2711.03 ("[t]he court *shall* hear the parties"), most courts have concluded a trial court commits reversible error when it resolves the motion without a hearing only where an evidentiary hearing has been requested. *KeyBank, N.A. v. David*, 2024-Ohio-5333, ¶ 41 (7th Dist.); *Liese v. Kent State Univ.*, 2004-Ohio-5322, ¶ 43 (11th Dist.); *Lee v. Bath Manor Ltd. Partnership*, 2023-Ohio-816, ¶ 11 (8th Dist.).

**{¶22}** Here, neither party requested a jury trial or an evidentiary hearing pursuant to R.C. 2711.03(B). Further, Appellant attached her affidavit to her opposition brief. In *Mattox v. Dillard's, Inc.*, 2008-Ohio-6488 (8th Dist.), the Eighth District reasoned, "appellant set forth her evidence in an affidavit. Therefore, the court 'heard' the parties." *Id.* at ¶ 15. In other words, Appellant submitted the matter to the trial court as the trier of fact on briefs.

**{¶23}** In order to stay a matter pending arbitration pursuant to R.C. 2711.02(B), the trial court must be "satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration." In order to enforce an arbitration agreement pursuant to R.C. 2711.03(A) the trial court must be "satisfied that the making of the agreement for arbitration or the failure to comply with the agreement is not in issue."

As the legislature has articulated an evidentiary standard that appears to be less than the preponderance of the evidence, we opined the trial court did not err in considering evidence that did not meet the requirements of Civ.R. 56(E).

**{¶24}** In her application for reconsideration, Appellant argues the trial court abused its discretion in considering the loan account assignment attached to the complaint because it was not authenticated. She further argues there is no evidence that she received a copy of the cardmember agreement, so she cannot be bound by the terms of the arbitration clause. We considered both of the foregoing arguments in our merits opinion.

**{¶25}** With respect to Appellant's receipt of the cardmember agreement, Appellant likens the facts in this case to the facts in *Midland Funding, LLC v. Raney*, 2018 IL App (5th) 160479 (Ill.App.). In that case, the Illinois court opined the cardmember agreement included no indication that it was mailed or in any way communicated to the cardholder. Here, we opined the text of the cardmember agreement could be interpreted to read that it was enclosed with the credit card.

**{¶26}** Moreover, Burger, the affiant in *Raney*, did not attest or testify that the records he was responsible for maintaining established the cardmember agreement had been provided to the cardholders, Darnell and Raney, prior to their use of the credit cards.

**{¶27}** The Fifth District of Illinois found:

Burger, in his declaration, stated that "[t]he records produced by Citibank included the Card Agreement applicable to the" accounts; however, when deposed, Burger testified that he had no personal knowledge regarding whether or not the Card Agreement was applicable, he did not know and was unaware of any document or other evidence to determine if the arbitration provision had been communicated to Darnell, and he did not testify otherwise regarding Raney.

*Id.* at ¶ 24.

**{¶28}** With respect to the requirements of the adoptive business records exception, the affidavits in this case warranted the cardmember agreement was a record

kept in the ordinary course of business by the original issuer of the credit card, and it was incorporated first into the records of Fair Square/Ally and then Appellee.

**{¶29}** Finally, Appellant claims she did not argue proof of the receipt of the cardmember agreement was required, but instead, "proof of knowledge of the existence of [the cardmember agreement] or of its terms is required." (Rep. Brf., p. 5.) However, we found the trial court could have been satisfied that knowledge of the existence of the cardmember agreement and of its contents were established by Appellant's receipt of the cardmember agreement. Although Appellant averred she did not receive a copy of the cardmember agreement prior to this litigation, the trial court as the finder of fact could have given Appellant's affidavit no weight based on other evidence in the record.

**{¶30}** Having reviewed Appellant's arguments, we find no obvious error in our decision that was not fully considered by us when it should have been. As we find no miscarriage of justice or obvious error occurred, Appellant's application predicated upon App.R. 26(A)(1) has no merit.

## EN BANC CONSIDERATION

**{¶31}** App.R. 26(A)(2) provides for en banc consideration when "two or more decisions of the court on which they sit are in conflict . . ." "[I]f the judges of a court of appeals determine that two or more decisions of the court on which they sit are in conflict, they must convene en banc to resolve the conflict." *McFadden v. Cleveland State Univ.*, 2008-Ohio-4914, paragraph two of the syllabus. Intra-district conflicts can arise when different panels of judges hear the same issue, but reach different results. *Gentile v. Turkoly*, 2017-Ohio-2958, ¶ 2 (7th Dist.), citing *McFadden* at ¶ 15.

**{¶32}** However, "[c]onsideration en banc is not favored and will not be ordered unless necessary to secure or maintain uniformity of decisions within the district on an issue that is dispositive in the case in which the application is filed." App.R. 26(A)(2)(a). The burden is on the party requesting en banc consideration to "explain how the panel's decision conflicts with a prior panel's decision on a dispositive issue and why consideration by the court en banc is necessary . . ." App.R. 26(A)(2)(b). En banc review will not be granted when the alleged conflict is between two factually distinguishable cases. *French v. Ascent Resources-Utica, LLC*, 2020-Ohio-6828, ¶ 9 (7th Dist.)

Case No. 24 MO 0018

**{¶33}** Appellant contends our application of the adoptive business records exception to the rule against hearsay is in conflict with our application of the same in *MidFirst Bank v. Cicoretti*, 2023-Ohio-3599 (7th Dist.) and *PNC Mortgage v. Kryncik*, 2017-Ohio-808. Appellant further argues our decision is in conflict with a string of cases – *Kar v. TN Dental Mgt., LLC*, 2024-Ohio-6075, ¶ 38 (7th Dist.); *Cameron v. Mark W. Liberty Midstream & Resources, LLC*, 2024-Ohio-5279, ¶ 69 (7th Dist.); *Ischy v. Northwood Energy Corp.*, 2022-Ohio-4755, ¶ 58 (7th Dist.); *Ramun v. Ramun*, 2014-Ohio-4440, ¶ 27 (7th Dist.) – in which we acknowledged there must be a meeting of the minds in order to form a contract.

**{¶34}** This case and the cases cited by Appellant are factually distinguishable. With respect to the adoptive business records exception, the business record in this appeal is the cardmember agreement. The business records in *Cicoretti* and *Kryncik* were executed loan documents and correspondence. As the cardmember agreement is a form document, we find the indicia for trustworthiness is different from documents executed between the parties. Moreover, many of the same averments regarding the reliability of the loan documents in *Cicoretti* and *Kryncik* were made with respect to the cardmember agreement by Permar and Romney in this case.

**{¶35}** Factual distinctions also exist with respect to the cases cited regarding a meeting of the minds. The cases cited by Appellant involve contract interpretation. Here, Appellant concedes the issues raised in the pleadings are arbitrable, but she contends she is not a party to the arbitration agreement. According to Appellant, the resolution of Appellee's motions to stay and to compel arbitration in this appeal turn on a factual issue, that is, her knowledge and acceptance of the terms of the cardmember agreement. We found the trial court did not abuse its discretion in concluding she received the cardmember agreement.

**{¶36}** Accordingly, Appellant's application for reconsideration pursuant to App.R. 26(A)(1) and for en banc reconsideration pursuant to App.R.26(A)(2) is denied.

**JUDGE KATELYN DICKEY**


**JUDGE CAROL ANN ROBB**


**JUDGE MARK A. HANNI**



<u>**NOTICE TO COUNSEL**</u>

**This document constitutes a final judgment entry.**


TO THE CLERK: PLEASE SERVE COPIES OF THIS ORDER TO ALL COUNSEL OF RECORD AND ANY SELF-REPRESENTED PARTIES

<u>Case No. 24 MO 0018</u>